762 P.2d 560

**CERTAINTEED CORPORATION, a Maryland corporation, Plaintiff/Appellee/Cross–Appellant,**

**v.**

**UNITED PACIFIC INSURANCE COMPANY, a Washington corporation, Defendant/Appellant/Cross–Appellee.**

**No. 2 CA–CV 87–0290.**

Court of Appeals of Arizona, Division 2, Department A.

March 29, 1988.

Review Denied Nov. 1, 1988.

Evans, Kitchel & Jenckes, P.C. by Robert L. Dysart and Kevin M. LeWinter, Phoenix, for plaintiff/appellee/cross-appellant.

Watt & Cohen by Melvin C. Cohen, Tucson, for defendant/appellant/cross-appellee.

HOWARD, Presiding Judge.

This is an appeal and cross-appeal from the granting of a summary judgment. The main issue is whether the defendant (United Pacific) was estopped from asserting the defense of the statute of limitations. The trial court granted the plaintiff (Certainteed) summary judgment for $21,392.20, which was only part of its claim. It denied judgment for any amounts over and above that sum.

## THE UNDISPUTED FACTS

Certainteed furnished building materials to C & D Pipeline, which was constructing a sewage treatment plant in San Luis, Arizona. United Pacific is the surety on a payment bond furnished by C & D for the protection of suppliers of labor and materials pursuant to A.R.S. § 34–222.[1] Certainteed furnished materials to C & D for the San Luis project. The last material was delivered on October 20, 1983. This meant that suit on the bond had to be brought by October 20, 1984. See A.R.S. § 34–223.

Certainteed periodically sent invoices to C & D which made partial payments. When Certainteed's demands for payment of the balance went unheeded, it made a demand upon United Pacific for payment under the bond. In late December of 1983, Certainteed turned the matter over to its attorney, Steven Hirsch. Certainteed provided Hirsch with a letter from Patrick Brady, an independent insurance agent for United Pacific who wrote the bond, which stated:

"Dear Mr. Sanford:

Per our discussion of today, I am enclosing a photocopy of the captioned labor and material payment bond.

I have discussed this matter with Mr. Bill Byrne of C & D Pipeline and I have been assurred (sic) that they are making every effort to clear your account. C & D's records indicate an amount due you of $126,601.28. It is my understanding that the amount owing from the town of San Luis exceeds $200,000 and that that amount is more than sufficient to pay your bill and all other amounts owing on this project.

Please call Mr. Bill Byrne at 792–0531 for information regarding when they expect to be able to settle your account."

On February 6, 1984, United Pacific sent the following letter to Certainteed:

1. This is part of what is known in Arizona as "The Little Miller Act."

"Your letter of December 27, 1983, in which you indicated certain amounts remained due your company on the above project, finally has been referred to this office.

Your letter contained very few details, and we have no current information concerning your allegations. Therefore, please note that our acknowledgment of receipt of that letter is not an admission of liability under the bond, nor does it constitute a waiver of any rights or defenses which may be available to the surety under the bond, or applicable law. It is the opinion of United Pacific Insurance Company that its principal is a financially responsible contractor which should be able to resolve this matter without our intervention. In fact, we have been informed that a partial payment has been made to your company, and have been advised that final payment will be made when all work is approved, accepted, and paid for by the obligee. [Town of San Luis]

We expect you should be able to arrange to resolve this matter with our principal, and would hope that you will advise us when that has occurred."

Based on these letters a decision was made to await payment by United Pacific rather than initiating litigation.

Having received no payment by May 1984, Hirsch sent a letter to Mr. Leftwich with United Pacific making a demand on the bond in the amount of $68,671.64. The letter stated that an action would be instituted unless Leftwich contacted Hirsch within ten days from the receipt of Hirsch's letter in order to make arrangements for full payment of Certainteed's claim.

Leftwich responded by letter dated May 10, 1984. He stated that United Pacific was in the process of reviewing in detail, C & D's accounts payable in order to determine whether it would be necessary for United Pacific to be involved in these matters. Despite the fact that Certainteed had already provided United Pacific with relevant invoices, Leftwich requested them again and the completion of United Pacific's proof of claim form. Leftwich assured Hirsch that he would be in contact with him shortly in order to advise him of United Pacific's findings. The proof of claim form was promptly completed and sent to United Pacific by late May 1984.

On May 21, Leftwich told Hirsch that United Pacific had obtained an independent auditor to check the books and records of C & D and that the auditor was examining each item of Certainteed's claim. Leftwich told Hirsch that United Pacific would proceed with payment of Certainteed's claim following the auditor's accounting. Leftwich also said that following the completion of the accounting he would contact Hirsch by the following week.

During the months of June, July and August, neither C & D, United Pacific, nor the auditor conducting the accounting of C & D's books responded to demands and inquiries made by Certainteed. On August 29, 1984, Hirsch once again sent a letter to United Pacific, this time reminding Leftwich of their prior correspondence and telephone conversations and stated that, since Hirsch had not heard from United Pacific, a complaint was being prepared and would be filed within ten days after receipt of Hirsch's letter unless payment on Certainteed's claim was immediately forthcoming.

On September 14, 1984, Hirsch spoke by telephone with Charles W. Langfitt of United Pacific. Langfitt told Hirsch that a special report prepared by the auditor had just been completed the day before and that it would be forwarded to Hirsch. Langfitt further told Hirsch that the results of this audit were apparently such that the amount United Pacific admittedly owed Certainteed totaled only $21,392.20, but he could not explain the difference between this number and the claim from Certainteed for over $60,000. At that time Langfitt made no reference to any contention that part of Certainteed's claim was unbonded.

Under cover of a letter dated September 18, 1984, Hirsch received the report referred to by Langfitt in their telephone conversation of September 14. The report consisted of a stack of Certainteed invoices

prefaced by a brief series of barely legible numbers on a balance sheet. There were also defenses to bonded and unbonded works. Certainteed concluded that the auditor had simply failed to take into account a number of invoices previously provided to C & D and United Pacific which resulted in a figure far less than the actual amount owed to Certainteed.

Hirsch suggested to United Pacific that Sanford deal directly with United Pacific's auditor in an effort to resolve the differing account and balances. On October 8, 1984, Hirsch spoke with Langfitt. Hirsch told Langfitt that although United Pacific had acknowledged that a portion of the claim was owed to Certainteed, it appeared that the auditor had missed a number of invoices and that the best method of resolving the matter would be by direct contact between Sanford and the auditor. Langfitt agreed and provided Hirsch with the auditor's name and telephone number to pass on to Sanford.

Sanford and United Pacific's auditor eventually discovered the missing invoices and reached the point where United Pacific's version of the amount due from C & D was close to the amount Certainteed had claimed all along, approximately $60,000. Certainteed was willing to accept United Pacific's figure, which was approximately $300 shy of the amount actually owed to Certainteed, in full and complete satisfaction of its claim.

However, on October 14, 1984, Sanford received an audit report from United Pacific showing that only $21,392.20 was covered by its bond. On October 29, or a few days after October 14, Sanford of Certainteed, called Hirsch and told him that United Pacific was now claiming that only a small portion of Certainteed's claim was on the project bonded by United Pacific.

On December 19, 1984, Hirsch advised Langfitt by telephone that Certainteed had no other recourse but to resort to litigation. Langfitt told Hirsch to go ahead and file and that it would only cost him a filing fee but requested that the matter be continued to be held in abeyance while the issues

concerning the latest auditor report were further investigated.

The next day, December 20, this action was filed. On December 21, United Pacific denied Certainteed's claim based on the one-year statute of limitations.

## DISPUTED FACTS

There are some facts that are in dispute. Attorney Hirsch claims that during his dealings with United Pacific he was told that so long as Certainteed and other creditors did not "rock the boat" by instituting litigation, C & D would be able to work its way out of its troublesome financial situation and, with the aid of the surety, would be able to make prompt payment of all obligations without resort to litigation. Hirsch believed that it was probably John Leftwich of United Pacific who told him this. Leftwich denies ever making such a representation.

## OTHER RELEVANT MATTERS

During the proceedings in the trial court United Pacific had taken the deposition of Hirsch. During the taking of the deposition counsel for United Pacific attempted to question Hirsch as to conversations that he had with his clients. Hirsch refused to answer these questions. United Pacific moved to compel Hirsch to answer them, but the trial court denied its motion.

United Pacific moved for reconsideration of the trial court's order granting partial summary judgment which had previously been ordered in favor of United Pacific and the denial of the motion to compel discovery. The court denied the motion for reconsideration. Certainteed and United Pacific then entered into a stipulated judgment, signed by the judge, against United Pacific in the amount of $21,392.20 plus interest. United Pacific stipulated it had no defenses other than the statute of limitations to the sum of $21,392.20.

United Pacific subsequently moved for a new trial, alleging that the trial court committed error in granting partial summary judgment to United Pacific and denying United Pacific's motion to compel dis-

covery. The motion for new trial was denied.

## CONTENTION OF THE PARTIES

In its appeal, United Pacific contends the trial court erred in granting only a partial summary judgment and in awarding Certainteed a judgment for part of the amounts that it claimed was due and owing because (1) there were disputed facts as to whether it waived the statute of limitations; (2) although it admitted it owed Certainteed $21,392.20, it never promised it would pay that amount nor was there any evidence of an offer to pay it; and (3) Hirsch knew as of September 14, 1984, that United Pacific was claiming that only some of Certainteed's claims were bonded. On the issue of the attorney-client privilege, United Pacific claims that Certainteed waived the privilege when it raised the issue of estoppel or waiver.

In its cross-appeal, Certainteed contends that the facts establish that United Pacific is estopped from asserting the statute of limitations as to all of Certainteed's claim, not just part of it.

## DISCUSSION

Summary judgment should only be granted where "the record demonstrates that there is no genuine dispute as to any material fact; ... only one inference can be drawn from the undisputed material facts; and ... as a matter of law the moving party is entitled to judgment." *Tribe v. Shell Oil Company, Inc.*, 133 Ariz. 517, 518, 652 P.2d 1040, 1041 (1982).

Certainteed did not argue in opposition to United Pacific's motion for summary judgment that United Pacific had agreed to waive the statute of limitations, nor does Certainteed make that argument on appeal. Rather, it is Certainteed's position that United Pacific is estopped by its conduct from asserting the statute of limitations as a defense.

Waiver and estoppel are not synonymous. "'[W]aiver is a voluntary relinquishment of a known right.'" *Builders Supply Corp. v. Marshall*, 88 Ariz. 89, 93,

352 P.2d 982, 986 (1960). "[E]stoppel means that a party is prevented by [its] own acts from claiming a right to the detriment of the other party who is entitled to rely on such conduct and has acted accordingly." *Graham v. Asbury*, 112 Ariz. 184, 185–186, 540 P.2d 656, 657–658 (1975). In its argument before the trial court and on appeal, United Pacific fails to distinguish between waiver and estoppel. Thus, the question is not whether there was evidence that United Pacific voluntarily relinquished its right to assert the statute of limitations, but whether United Pacific's conduct precludes assertion of the statute of limitations.

■ An estoppel with respect to a contractual limitation period will exist if an insurer by its conduct induces its insured to forego litigation, by leading him to reason and believe a settlement or adjustment of his claim will be effected without the necessity of bringing suit. "Negotiation alone is insufficient to support a finding of ... estoppel if it is terminated within adequate time for the insured to institute action on the policy." *Shea North, Inc. v. Ohio Casualty Insurance Company*, 115 Ariz. 296, 298, 564 P.2d 1263, 1265 (App.1977). See also, *Kelley v. Robison*, 121 Ariz. 229, 589 P.2d 472 (App.1978).

■ The undisputed facts in this case show that United Pacific consistently took the position that it was undisputed that a debt was owed and that the only question remaining was the exact amount of the debt owed. United Pacific represented to Certainteed that its principal would be capable of paying the amount as owed. United Pacific failed to contact Certainteed for several months after telling Certainteed that United Pacific was reviewing the matter. United Pacific responded to Certainteed only after Certainteed again threatened suit if United Pacific did not respond in ten days. When United Pacific's reports were produced, Certainteed quickly pointed out errors in the calculations leading up to a virtual settlement of the claim. United Pacific, prior to the time the statute of limitations had run, had never mentioned to Hirsch that it had a partial defense to

Certainteed's claim, although it did send Hirsch, on September 14, 1984, illegible material that purportedly shows that United Pacific was claiming some of the amounts claimed by Certainteed were not covered by its bond. It was only after the statute of limitations had run that United Pacific refused to pay anything. At no time prior to the running of the statute did it ever tell Hirsch or Sanford from Certainteed that it was absolutely refusing to pay anything.

We believe that under the facts here, reasonable men could not differ. There was never any dispute as to the fact that Certainteed was owed some money under the bond. The only question was how much. The evidence clearly shows that Certainteed was led to believe that a settlement or adjustment of the claim would be effected without the necessity of bringing suit and that it was only after the statute of limitations had run that United Pacific said it would not pay. Even if one adopted the theory that the audit report received by Sanford on October 14, 1984, was a rejection of the claim, Certainteed still had a reasonable time thereafter to file suit, which was done in this case. See *United States For Use And Benefit of Humble Oil & Refining Co. v. Fidelity & Casualty of New York*, 402 F.2d 893 (4th Cir.1968).

United Pacific's argument that Certainteed has waived the attorney-client privilege by asserting the defense of estoppel is without merit. A.R.S. § 12–2234 sets forth the attorney-client privilege as follows:

> "In a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment...."

The purpose of the privilege is to encourage candor by the clients so that the lawyer's advice will be based on reliable information. *State v. Holsinger*, 124 Ariz. 18, 601 P.2d 1054 (1979). United Pacific's contention in this regard can best be understood by quoting relevant portions of its opening brief:

> "Why suit was not filed is a relevant question. What, if anything, was said concerning waiver of suit is a relevant inquiry.

> \*    \*    \*    \*    \*    \*

> The information sought was necessary and relevant. If attorney Hirsch never told his client that United Pacific agreed to waive the statute or offered to make payment regardless of suit, it would effect (sic) the credibility of the allegation made by Steven Hirsch that there was no need to sue. If at the time Steven Hirsch alleged there was a waiver and his client directed him to sue, not only would Steven Hirsch's credibility be questioned, but it might negate any reasonable reliance argument. If Steven Hirsch informed his client that United Pacific offered to make payment of the lesser amount but not the greater amount claimed by Certainteed and Certainteed instructed its attorney to proceed with suit, there would be no basis for estoppel. The veracity and credibility of the witness upon which the entire argument of estoppel rests is at issue and United Pacific was deprived of the means to discover necessary information.

> \*    \*    \*    \*    \*    \*

> The entire case is based on what attorney Steven Hirsch knew and when he knew it. To deprive United Pacific of the opportunity to learn what statements he made or did not make which might contradict what he has said or to learn facts that would infer opposite representations by United Pacific deprived United Pacific of a necessary opportunity to defend its case. Certainteed cannot raise the defense of justifiable reliance by its attorney and then prohibit the attorney's conduct to be examined. Certainteed has waived the attorney-client privilege by injecting the issue."

United Pacific then cites those cases holding that a deliberate injection of the advice of counsel into a case waives the attorney-client privilege as to communications and documents relating to the advice. Cf. *Garfinkle v. Arcata National Corporation*, 64 F.R.D. 688 (S.D.N.Y.1974).

■ United Pacific's position is not well taken. Certainteed is not asserting an advice-of-counsel defense. The conversations between Hirsch and his client are not in issue. What is in issue is the conduct of United Pacific. The trial court did not err in denying United Pacific's motion to compel discovery.

Certainteed will be awarded its attorney's fees on appeal upon compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

The granting of partial summary judgment in favor of United Pacific is reversed and remanded for further proceedings consistent with this opinion. United Pacific is estopped from asserting the statute of limitations defense on remand, and the judgment for Certainteed and against United Pacific is affirmed.

LACAGNINA, C.J., and HATHAWAY, J., concur.