964 P.2d 477

Mary Ella NOLDE; Mya Johnson and Kathleen Andersen, Plaintiffs–Appellants.

v.

Bruce FRANKIE; Glendale Union High School District, Defendants-Appellees.

No. CV–97–0276–PR.

Supreme Court of Arizona, En Banc.

Sept. 17, 1998.

Treon, Strick, Lucia & Aguirre by Richard T. Treon, Arthur G. Newman, Jr., and Michael T. DePaoli, Phoenix, for Plaintiffs-Appellants.

Jones, Skelton & Hochuli by A. Melvin McDonald and Eileen J. Dennis, Phoenix, for Defendant-Appellee Frankie.

D. Reid Garrey, P.C. by D. Reid Garrey and Shawna M. Woner, Scottsdale, and Teilborg, Sanders & Parks, P.C. by Bradley R. Jardine, Rick N. Bryson, and David E. Koval, Phoenix, for Defendant-Appellee Glendale Union High School District.

## OPINION

McGREGOR, Justice.

¶ 1 The plaintiffs appeal the trial court's order granting summary judgment in favor of the defendants on grounds that the statute of limitations bars this action. Because the trial court erred in its application of the law, we reverse and remand for the trial court to determine whether an issue of material fact exists as to whether defendant Frankie induced plaintiffs to delay filing their action, and whether their delay was reasonable.

### I.

¶ 2 Each of the three plaintiffs in this action alleges she became sexually involved with defendant Bruce Frankie while she was still a minor.[1] Frankie was, at all relevant times, a teacher and athletic coach at Washington High School (the school), and coached each of the plaintiffs. The school operates within the defendant Glendale Union High School District (the district).

¶ 3 Plaintiff Kathleen Andersen attended the school from 1972 through 1976. Frankie began a sexual relationship with her when she was a 17–year–old senior. The relationship continued until she was 19 years of age.

¶ 4 Plaintiff Mary Ella Nolde attended the school from 1981 through 1985. During her freshman year, when Nolde was 14 years old, Frankie initiated a sexual relationship with her. Frankie discontinued the relationship with Nolde during the early part of her senior year, in 1984.

¶ 5 Frankie began a sexual relationship with plaintiff Mya Johnson in 1983, when Johnson was 14 years old. This relationship continued through Johnson's graduation from the school in 1987 and thereafter for four more years.

¶ 6 Each of the plaintiffs came from a broken family and initially considered Frankie a father-figure. Frankie devoted personal attention to the girls and made them feel special and loved. Before they became sexually involved with Frankie, each of them developed a strong emotional attachment to him. Even after the sexual relationship began, each desired to please Frankie and to maintain her emotional relationship with him.

¶ 7 During his sexual abuse of Nolde and Johnson, Frankie instructed them never to disclose the sexual nature of his relationships with them. He warned them that he would lose his job and family if anyone were to

---

1. Because this appeal arises from summary judgment in favor of the defendants, we consider the facts in the light most favorable to the plaintiffs.

*See Maxwell v. Fidelity Fin. Servs., Inc.*, 184 Ariz. 82, 85, 907 P.2d 51, 54 (1995).

learn of the relationships. Although none of the plaintiffs personally experienced physical abuse at the hands of Frankie, they all perceived him as intimidating and as prone to using violence against anyone who crossed him. They all asserted that Frankie made them feel special and loved and that they saw themselves as being at fault for allowing a sexual relationship to occur. In addition, the plaintiffs believed that Frankie emotionally and psychologically dominated them during and after their relationships with him.

¶ 8 During the years following their sexual relationships with Frankie, the plaintiffs experienced various effects of the abuse, including depression, dysfunctional personal relationships, and physical illness. In July 1993, Nolde and Johnson, ages 25 and 24 respectively, filed a complaint against Frankie and the district. The complaint alleged claims for intentional infliction of emotional distress, outrage, invasion of privacy, assault, battery, and breach of fiduciary duty. Andersen joined the action as a plaintiff in February 1994, at age 36.

¶ 9 The defendants moved for summary judgment on grounds that the statute of limitations bars the action. In response, the plaintiffs asserted three arguments. First, they argued that their causes of action did not accrue until they knew or should have known of the causal connection between their injuries and Frankie's conduct. They contended that an issue of material fact exists as to when the causes of action accrued based on this "delayed discovery." Second, they argued that expert testimony established that they suffer from post-traumatic stress disorder, which prevented them from bringing a timely action. Third, they argued that because of Frankie's conduct toward them, equity precluded the defendants from asserting the statute of limitations defense.

¶ 10 After holding that Arizona law does not provide any basis for equitable tolling of the statute of limitations and that the plaintiffs were not under any disability that would toll the statute, the trial court granted the defendants' motions. The court of appeals affirmed and the plaintiffs filed a petition for review to this court. We granted review and

have jurisdiction pursuant to Arizona Constitution, article VI, section 5.

## II.

¶ 11 Under most circumstances, we would affirm the trial court's judgment because the limitations statute would bar plaintiffs' action as a matter of law. *See Garza v. Fernandez,* 74 Ariz. 312, 316, 248 P.2d 869, 871 (1952) (court will affirm summary judgment if no material issue of fact exists and moving party is entitled to judgment as a matter of law). The statute of limitations period for a personal injury action is two years, commencing on the date the action accrues. A.R.S. § 12–542.1 (1992). Because a cause of action that arises during a plaintiff's minority does not accrue until the plaintiff reaches eighteen years of age, A.R.S. § 12–502.A. (1992), the plaintiffs had two years from the date they reached majority to bring their respective causes of action. As plaintiffs admit, they did not file their action within the two-year time period.

¶ 12 The statute of limitations serves an important purpose. The statute protects defendants and the courts from litigation of stale claims in which "plaintiffs have slept on their rights and evidence may have been lost or witnesses' memories faded." *Brooks v. Southern Pac. Co.,* 105 Ariz. 442, 444, 466 P.2d 736, 738 (1970). The policy underlying the limitations statute "is sound and necessary for the orderly administration of justice." *Id.*

¶ 13 However, a defendant may not use the statute of limitations as a shield for inequity. *See Hosogai v. Kadota,* 145 Ariz. 227, 231, 700 P.2d 1327, 1331 (1985); *Waugh v. Lennard,* 69 Ariz. 214, 221, 211 P.2d 806, 810 (1949). Hence, notwithstanding the important policy served by the limitations statute, Arizona courts have recognized equitable exceptions to the application of the statute when necessary to prevent injustice. *Hosogai,* 145 Ariz. at 231, 700 P.2d at 1331.

¶ 14 One such exception applies when a defendant induces a plaintiff to forbear filing suit. In *Certainteed Corporation v. United Pacific Insurance Company,* 158 Ariz. 273, 762 P.2d 560 (App.1988), for in-

stance, the court estopped a defendant insurer from raising the limitations defense because the insurer had induced its claimant to delay filing suit. The insurer repeatedly delayed in responding to a legitimate insurance claim filed by the claimant, and represented that the claimant need not initiate litigation for the insurer to settle the claim. 158 Ariz. at 278, 762 P.2d at 565.

¶ 15 The *Certainteed* court held that "[a]n estoppel with respect to a contractual limitation period will exist if an insurer by its conduct induces its insured to forego litigation, by leading him to reason and believe a settlement or adjustment of his claim will be effected without the necessity of bringing suit." *Id.* at 277, 762 P.2d at 564. Similarly, in *Roer v. Buckeye Irrigation Company*, 167 Ariz. 545, 547, 809 P.2d 970, 972 (App.1990), the court held that estoppel applies if a defendant engaged in conduct that induced a plaintiff to forego litigation by leading the plaintiff to believe his claim would be settled without the necessity of litigation. *Cf. Hall v. Romero*, 141 Ariz. 120, 126, 685 P.2d 757, 763 (App.1984) (declining to apply the estoppel doctrine to bar the limitations defense because the defendant did not engage in conduct to induce the plaintiffs to forbear filing suit).

■ ¶ 16 We agree, as decisions such as those summarized above recognize, that equitable considerations may estop a defendant from claiming the protection provided by a limitations statute. To benefit from estoppel by inducement, however, a plaintiff must establish four factors. First, the plaintiff must identify specific promises, threats or inducements by the defendant that prevented the plaintiff from filing suit. *See Floyd v. Donahue*, 186 Ariz. 409, 413, 923 P.2d 875, 879 (App.1996) (stating that estoppel does not apply in the absence of evidence of "concealment, a specific threat or demonstrable duress"). Vague statements or ambiguous behavior by the defendant will not suffice.

¶ 17 Second, estoppel by inducement will preclude a defendant from raising the limitations defense only if the defendant's promises, threats or representations actually induced the plaintiff to forbear filing suit. *See Roer*, 167 Ariz. at 547, 809 P.2d at 972 ("In

order to create an estoppel the conduct of the defendant must be so misleading as *to cause* the plaintiff's failure to file suit.") (emphasis added). Thus, when determining whether to apply the estoppel doctrine, a court must inquire into the plaintiff's subjective reasons for failing to file a timely suit.

■ ¶ 18 Third, the doctrine applies only if the defendant's conduct *reasonably* caused the plaintiff to forbear filing a timely action. *See id.* at 547–48, 809 P.2d at 972–73 (holding that estoppel was not applicable because the defendants' non-committal acts toward plaintiff would not have induced a reasonable person to believe the defendants would remedy plaintiff's damages without the necessity of litigation, and thus to delay filing suit). This inquiry focuses on the plaintiff's objective basis for failing to file suit within the limitations period. When considering the reasonableness of the plaintiff's failure to timely file, a court must determine whether the defendant's conduct resulted in duress so severe as to deprive a reasonable person of the freedom of will to file the action. *See Jones v. Jones*, 242 N.J.Super. 195, 576 A.2d 316, 323 (App.Div.1990) (stating that the duress exerted by a defendant "must have risen to such a level that a person of reasonable firmness in the plaintiff's situation would have been unable to resist").

■ ¶ 19 Fourth, the plaintiff must file suit within a reasonable time after termination of the conduct warranting estoppel. *See Nelson v. Nelson*, 137 Ariz. 213, 216, 669 P.2d 990, 993 (App.1983) ("[A]ssuming the appellant justifiably delayed the initiation of an action to assert her rights in reliance on the fiduciary relationship between the parties or because of mistake, misrepresentation or fraud, she nevertheless had a reasonable time to sue after the promises or representations ceased to justify delay."); *Brewer v. Food Giant Supermarkets, Inc.*, 121 Ariz. 216, 217, 589 P.2d 459, 460 (App.1978) ("If estoppel applies, the party has a reasonable time to sue after the promises or representations have ceased to justify delay."); *see also Murphy v. Merzbacher*, 346 Md. 525, 697 A.2d 861, 866 (1997)(stating that estoppel by duress applies only if a plaintiff brings action

"within a reasonable time after the conclusion of the events giving rise to the estoppel"); *John R. v. Oakland Unified Sch. Dist.,* 48 Cal.3d 438, 256 Cal.Rptr. 766, 769 P.2d 948, 952 (1989) (remanding for determination of whether the defendant in a sexual abuse action threatened the plaintiff, when the effect of any such threats ceased, and whether the plaintiff "acted within a reasonable time after the coercive effect of the threats had ended"). Implicit in this requirement is the notion that the estoppel by inducement doctrine does not permit the indefinite and unlimited extension of the limitations period. The requirement also allows a defendant to limit the period during which estoppel might otherwise apply by taking affirmative steps to terminate whatever behavior or conduct arguably operated to induce a plaintiff not to sue.

¶ 20 Thus, in determining whether a defendant is estopped from asserting the limitations defense based on inducement to forbear filing suit, a trial court must determine: (1) whether the defendant engaged in affirmative conduct intended to cause the plaintiff's forbearance; (2) whether the defendant's conduct actually caused the plaintiff's failure to file a timely action; (3) whether the defendant's conduct reasonably could be expected to induce forbearance; and (4) whether the plaintiff brought the action within a reasonable time after termination of the objectionable conduct. Ordinarily, each of these inquiries will involve questions of fact, and therefore will be resolved by the factfinder. In some cases, however, a court appropriately may conclude as a matter of law that no reasonable jury could find for the plaintiff on one or more of these inquiries. *See Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (stating that summary judgment is appropriate if facts submitted in support of a claim or defense "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense").

¶ 21 From the record before us, we cannot ascertain whether the trial judge considered the plaintiffs' argument that the doctrine of estoppel by inducement should apply to prevent defendants from urging the statute of limitations. It appears, however, that the judge did not measure the plaintiffs' allegations against the standard defined above. For that reason, we remand this action to permit the trial judge to determine whether Frankie's affirmative conduct actually and reasonably induced the plaintiffs to delay filing suit, and whether their delay was reasonable.[2] The trial court may find that summary judgment is appropriate as to one or more of the plaintiffs. If not, the trier of fact must resolve these factual issues.

### III.

¶ 22 The plaintiffs next argue that an issue of fact exists as to whether each of the plaintiffs was of unsound mind for purposes of A.R.S. § 12–502.A,[3] and thus, whether that disability tolled the statute of limitations. A person of unsound mind is one who "is unable to manage his affairs or to understand his legal rights or liabilities." *Allen v. Powell's Int'l, Inc.,* 21 Ariz.App. 269, 270, 518 P.2d 588, 589 (1974). We recently affirmed this two-pronged definition of unsound mind in *Doe v. Roe,* 191 Ariz. 313, 955 P.2d 951 (1998), and *Florez v. Sargeant,* 185 Ariz. 521, 917 P.2d 250 (1996).

### A.

¶ 23 To justify tolling a limitations statute because a person lacks ability to manage his daily affairs, we require "hard evidence that a person is simply incapable of carrying on the day-to-day affairs of human existence." *Florez v. Sargeant,* 185 Ariz. 521,

---

2. The question whether, if defendant Frankie's conduct estops him from asserting the statute of limitations, the district is likewise estopped, is not before us. We therefore express *no opinion* on that question.

3. A.R.S. § 12–502.A provides:

If a person entitled to bring an action ... is at the time the cause of action accrues ... of unsound mind, the period of such disability shall not be deemed a portion of the period limited for commencement of the action. Such person shall have the same time after removal of the disability which is allowed to others.

526, 917 P.2d 250, 255 (1996). Such evidence provides "empirical facts easily verifiable and more difficult to fabricate than a narrow claim of inability to bring the action." *Id.* This court's decisions in *Doe* and *Florez* illustrate the showing needed to toll the statute on this basis.

¶ 24 One of the plaintiffs in *Florez* submitted expert affidavits stating that he suffered from post-traumatic stress disorder, depression, sexual identity problems, and other problems; the other plaintiff's expert affidavit stated that she suffered from post-traumatic stress disorder. *Id.* at 523–24, 917 P.2d at 252–53. The expert affidavits opined that because of these psychological problems, the plaintiffs were of unsound mind for purposes of section 12–502.A. *Id.* at 527, 917 P.2d at 256. Notwithstanding these conclusory assertions, we held that the defendants were entitled to summary judgment. The undisputed evidence demonstrated that the plaintiffs were able to maintain employment, to handle financial affairs, to manage their daily affairs, and to take care of themselves. *Id.* at 526, 917 P.2d at 255. "[S]imply attaching the post-traumatic stress disorder label to a person's symptoms is insufficient to satisfy the *Allen* definition of unsound mind." *Id.* at 525, 917 P.2d at 254.

¶ 25 By contrast, the plaintiff in *Doe* presented evidence that, as a result of her mental problems, she was unable to manage her daily affairs:

> The record contains evidence from which one could conclude that for a considerable period of time Plaintiff was unable to function in day-to-day affairs. She experienced suicidal ideation, was in denial of the abuse she suffered, and required psychological and psychiatric therapy and treatment as well as institutionalization for her mental condition; because she was unable to function at work, she had to quit her job and was unable to seek other employment. Because of her denial and inability to articulate or discuss the abusive acts, a jury could find that Plaintiff, unlike the *Florez* plaintiffs, was disabled and thus unable to seek or address the issues with legal counsel for approximately two years. Also, unlike the *Florez* plaintiffs, Plaintiff was not ready to talk about it; nor was she ready to deal with it. Unlike the affidavit in *Florez*, the affidavits in this case present facts, not mere conclusory opinions of post-traumatic stress disorder or unsound mind.

191 Ariz. at 327, 955 P.2d at 965.

■ ¶ 26 The plaintiffs in the instant case, like those in *Florez*, failed to present evidence sufficient to create an issue of material fact as to whether they were unable to manage their daily affairs for purposes of meeting *Allen*'s unsound mind definition. As a matter of law, the plaintiffs did not meet the daily affairs prong of *Allen*.

### B.

■ ¶ 27 The plaintiffs likewise did not present evidence sufficient to raise an issue of fact as to whether they failed to bring suit within the limitations period because they were unable to understand their legal rights and liabilities. In *Doe*, we considered the interaction between the limitations statute and the delayed discovery of a cause of action attributable to alleged repressed memory of severe sexual abuse. 191 Ariz. at 315, 955 P.2d at 953. We concluded that the plaintiff's evidence, which indicated that she had repressed memories of her sexual abuse and had denied that such abuse had taken place, provided a basis for concluding that she was unable to understand and assert her legal rights at the time her cause of action accrued. *Id.* at 329, 955 P.2d at 967.

¶ 28 The plaintiffs here made no comparable showing. None of the plaintiffs allege that they ever were in denial that the sexual abuse occurred. Neither do they claim that they repressed memories of the abuse. To the contrary, the plaintiffs admit that they were aware at all times that Frankie had abused them sexually. The personal and expert affidavits submitted by plaintiffs, stating that they were unable to understand their legal rights arising out of their sexual relationships with Frankie, provide mere conclusory statements that are not sufficient to withstand a motion for summary judgment. *See Pace v. Sagebrush Sales Co.*, 114 Ariz. 271, 275, 560 P.2d 789, 793 (1977); Rule 56(e), Ariz. R. Civ. P.

¶ 29 Because the plaintiffs failed to raise an issue of material fact as to either prong of the *Allen* definition of unsound mind, A.R.S. § 12–502.A does not apply to toll the statute of limitations.

### IV.

¶ 30 The plaintiffs also argue that their causes of action did not accrue until they discovered the causal connection between their psychological injuries and Frankie's sexual abuse of them, and that an issue of fact exists as to whether the plaintiffs filed this action within two years of their discovering the cause of their injuries.

¶ 31 Under Arizona's discovery rule, a cause of action based on sexual abuse accrues when the plaintiff becomes aware of the "what" and the "who" elements of the claim, *see Doe*, 191 Ariz. at 323, 955 P.2d at 961, i.e., the conduct constituting the sexual abuse and the identity of the abuser. If a plaintiff possesses at least "a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury," then the cause of action accrues. *Id.*

¶ 32 These plaintiffs admittedly have been aware at all times that they were sexually abused and that Frankie was the abuser. The plaintiffs knew, or should have known, by the time they reached majority, that Frankie's sexual conduct toward them as minors caused personal injury, even if they did not know the extent of such injuries. Therefore, the discovery rule did not delay accrual of their causes of action, even if they were not aware of the existence or extent of resulting psychological injury.[4]

### V.

¶ 33 For the foregoing reasons, we vacate the opinion of the Court of Appeals, reverse the trial court's judgment in favor of the

defendants, and remand for further proceedings consistent with this opinion.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and MARTONE, JJ., concur.

---

4. *See, e.g., Doe v. Dorsey*, 683 So.2d 614, 616 (Fla.Dist.Ct.App.1996); *Doe v. Archdiocese of Wash.*, 114 Md.App. 169, 689 A.2d 634, 641 (1997); *Blackowiak v. Kemp*, 546 N.W.2d 1, 3 (Minn.1996); *Bassile v. Covenant House*, 152 Misc.2d 88, 575 N.Y.S.2d 233, 235–36 (N.Y.Sup. Ct.1991), *aff'd*, 191 A.D.2d 188, 594 N.Y.S.2d 192 (1993); *Ault v. Jasko*, 70 Ohio St.3d 114, 637 N.E.2d 870, 873 (1994); *Cooksey v. Portland Pub.*

*Sch. Dist. No. 1*, 143 Or.App. 527, 923 P.2d 1328, 1332 (1996); *E.J.M. v. Archdiocese of Philadelphia*, 424 Pa.Super. 449, 622 A.2d 1388, 1394 (1993); *Doe v. R.D.*, 308 S.C. 139, 417 S.E.2d 541, 542 (1992); *Doe v. Coffee County Bd. of Educ.*, 852 S.W.2d 899, 904 (Tenn.Ct.App.1992); *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis.2d 302, 533 N.W.2d 780, 786 (1995).