NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

A-PLAN DEFENSE FUND, INC., a non-profit entity; ALLEN ADAMS, II;
EUGENE H. FRANK; JOHN LUMLEY; PETER W. MCCUE, III; ARTHUR
MELNICK; GERALD N. PILOT; and RICHARD P. BARTHELEMY,
appearing as individuals and as class representatives, *Plaintiffs/Appellants*,

*v.*

QUARLES & BRADY, LLP, *Defendant/Appellee*.

No. 1 CA-CV 13-0054
FILED 2-27-2014

Appeal from the Superior Court in Maricopa County
No. CV2008-023215
The Honorable Katherine Cooper, Judge

**AFFIRMED**

COUNSEL

Law Office of Ethan Steele, P.C., Tucson
By Ethan Steele

*Counsel for Plaintiffs/Appellants*

Osborn Maledon, P.A., Phoenix
By Geoffrey M.T. Sturr, Thomas L. Hudson, Sharad H. Desai

*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

---

**W I N T H R O P,** Judge:

¶1          Plaintiffs, A-Plan Defense Fund, Inc. ("APDF"); Allen Adams, II; Eugene H. Frank; John Lumley; Peter W. McCue, II; Arthur Melnick; Gerald N. Pilot; and Richard P. Barthelemy (collectively, "Appellants") appeal the superior court's summary judgment in favor of Defendant, Quarles & Brady, L.L.P. ("Quarles & Brady") on the basis that Appellants' legal malpractice lawsuit is precluded by the statute of limitations.  Appellants argue that (1) they filed their lawsuit before the statutory limitations period had expired, and (2) even if their lawsuit was not filed within the statutory period, Quarles & Brady is equitably estopped from asserting a statute of limitations defense.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

¶2          The individual Appellants in this case are retired and active pilots for Trans World Airlines ("TWA").  This legal malpractice case arises from Appellants' efforts to save their TWA pension plan ("the A-Plan").

¶3          In 1992, TWA filed for bankruptcy, and the Pension Benefit Guaranty Corporation ("PBGC") - a corporation wholly owned by the federal government that operates a mandatory government insurance program which protects pension benefits covered by the Employee Retirement Income Security Act of 1974 ("ERISA") - issued a notice that

---

[1]          Quarles & Brady notes that Appellants have failed to fully support factual assertions contained in their opening brief with specific citations to the record.  We decline Quarles & Brady's invitation to sanction Appellants, however, and instead rely on our review of the record in deciding this appeal on the merits. *See Clemens v. Clark*, 101 Ariz. 413, 414, 420 P.2d 284, 285 (1966); *Lederman v. Phelps Dodge Corp.*, 19 Ariz. App. 107, 108, 505 P.2d 275, 276 (1973).

TWA's pension plans, including the A-Plan, were significantly underfunded. PBGC expressed its intention to terminate the pension plans and pursue TWA and its chairman, Carl Icahn, for the $1.124 billion in underfunded liability. To resolve disputes that prevented TWA from moving forward with reorganization, PBGC, TWA, Icahn, and the respective unions, including the Air Line Pilots Association, International ("ALPA"), entered a Comprehensive Settlement Agreement ("CSA"). In part, the CSA provided that PBGC would not terminate the pension plans unless a "Significant Event," as defined in the CSA, occurred. In December 2000, Pichin Corporation ("Pichin"), an Icahn subsidiary authorized to oversee the pension plan, notified PBGC that such a significant event had occurred, and requested that PBGC terminate the pension plans. PBGC agreed to terminate the plans pursuant to the CSA. In an effort to stop PBGC, restore the A-Plan, and obtain monetary damages resulting from the A-Plan's termination, ALPA filed a lawsuit (the "*ALPA*" action) in the United States District Court for the District of Columbia on December 29, 2000. ALPA argued that both the CSA and termination of the A-Plan violated ERISA.

¶4        In November 2001, while summary judgment motions in the *ALPA* action were pending, APDF retained Quarles & Brady to analyze any potential claims and possibly file a motion to intervene. Before Quarles & Brady could file a motion to intervene on Appellants' behalf, however, the district court (the Honorable Ricardo M. Urbina, now-retired) granted a defense motion for summary judgment on March 29, 2002. *See Air Line Pilots Ass'n, Int'l v. Pension Benefit Guar. Corp.*, 193 F. Supp. 2d 209 (D.D.C. 2002). Judge Urbina determined the challenged portion of the CSA did not violate ERISA, PBGC made an appropriate cause determination pursuant to ERISA in 1992 before entering the CSA, and PBGC's actions in terminating the A-Plan in 2001 were neither arbitrary nor capricious. *Id*. at 217-21.

¶5        On May 15, 2002, Quarles & Brady filed, on behalf of Appellants, a separate class action (the "*Adams*" action) in the United States District Court for the District of Columbia against entities involved in the *ALPA* action, including PBGC, Pichin, and ALPA. Appellants sought an order setting aside termination of the A-Plan and monetary damages for lost benefits. On July 22, 2002, the district court (the Honorable Royce C. Lamberth) stayed *Adams* pending disposition of the *ALPA* appeal. On July 11, 2003, the United States Court of Appeals for the District of Columbia Circuit affirmed Judge Urbina's ruling in *ALPA*. *See Allied Pilots Ass'n v. Pension Benefit Guar. Corp.*, 334 F.3d 93, 98-99 (D.C. Cir. 2003) (holding in part that PBGC had statutory authority under ERISA

section 4067, *see* 29 U.S.C. § 1367, to postpone termination pending occurrence of a defined event). The stay in *Adams* was then lifted.

¶6             In August 2003, Appellants discharged Quarles & Brady and retained new counsel in the *Adams* action. In September 2003, Appellants filed an amended complaint, in which they dropped claims against ALPA, and they filed a separate petition for writ of mandamus to compel PBGC to recover from Pichin the A-Plan's unfunded pension liability. The *Adams* complaint and petition for writ of mandamus argued that PBGC did not have statutory authority to enter the CSA.

¶7             On October 15, 2003, Appellants sent a letter to Quarles & Brady in response to an inquiry asking when their unpaid bills would be paid. In the letter, Appellants stated they had been injured by Quarles & Brady's failure to file a motion to intervene in the *ALPA* action. Appellants claimed that, as a result of Quarles & Brady's conduct, they had incurred excessive and additional legal fees and lost the opportunity to participate in the *ALPA* action.

¶8             On August 25, 2004, the federal district court (Judge Lamberth) granted the defendants' motion to dismiss in *Adams*. *See Adams v. Pension Benefit Guar. Corp.*, 332 F. Supp. 2d 231 (2004). On January 27, 2006, the United States Court of Appeals for the District of Columbia Circuit affirmed Judge Lamberth's decision, and the United States Supreme Court denied certiorari on October 10, 2006. *See Adams v. Pension Benefit Guar. Corp.*, 170 Fed. App'x 142 (D.C. Cir. 2006), *cert. denied*, 549 U.S. 972 (2006).

¶9             On September 23, 2008, Appellants filed their complaint against Quarles & Brady. In their First Amended Complaint, Appellants claimed that Quarles & Brady negligently failed to file a motion to intervene in the *ALPA* lawsuit and had ultimately failed to provide Appellants with any service of value.

¶10            In July 2012, Quarles & Brady moved for summary judgment on several grounds, including the statute of limitations, arguing that Appellants' complaint was barred because it had been filed after the statutory two-year limitations period for legal malpractice actions. Citing *Nolde v. Frankie*, 192 Ariz. 276, 964 P.2d 477 (1998), Appellants responded that Quarles & Brady was equitably estopped from asserting a statute of limitations defense. After oral argument on October 5, 2012, the superior court took the matter under advisement.

¶11         In a minute entry filed October 11, 2012, the superior court granted Quarles & Brady's motion for summary judgment, finding Appellants' claims barred by the statute of limitations.[2]  On November 30, 2012, the superior court issued a signed final judgment in favor of Quarles & Brady, and awarded taxable costs in the amount of $20,815.34.

¶12         Appellants filed a timely notice of appeal from the superior court's final judgment.  This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (West 2014)[3] and 12-2101(A)(1).

## ANALYSIS

### I.     Standard of Review

¶13         In reviewing the grant of a motion for summary judgment, we construe the facts and reasonable inferences in the light most favorable to the opposing party and will affirm only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶¶ 13-14, 38 P.3d 12, 20 (2002); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).  Summary judgment is proper if the facts produced in support of a claim or defense have so little probative value, given the quantum of evidence required, that no reasonable person could find for its proponent.  *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.  Thus, the mere existence of a "scintilla" of evidence that creates the "slightest doubt" is insufficient to withstand a motion for summary judgment.  *Id.*  We review *de novo* issues of statutory interpretation and the court's application of the law.  *Dressler v. Morrison*, 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978, 980 (2006); *State Comp. Fund v. Yellow Cab Co.*, 197 Ariz. 120, 122, ¶ 5, 3 P.3d 1040, 1042 (App. 1999).

### II.     Statute of Limitations

¶14         Appellants argue that the superior court erred in finding their lawsuit barred by the statute of limitations.  They maintain the statutory limitations period did not begin to run on their claims against

---

[2]     The superior court did not address the other arguments advanced by Quarles & Brady in support of the motion for summary judgment.

[3]     We cite the current version of the applicable statutes unless changes material to our decision have since occurred.

Quarles & Brady until October 10, 2006, when the Supreme Court denied certiorari in *Adams*, because only then did their damages from Quarles & Brady's alleged failure to timely intervene in *ALPA* become irremediable and no longer contingent. Because the undisputed facts show that Appellants' claims accrued no later than October 2003, we disagree.

¶15         In Arizona, a legal malpractice claim must be filed no more than two years from the date (1) a plaintiff knows or reasonably should know of an attorney's negligent conduct, and (2) the damages from the conduct are ascertainable, and not speculative or contingent. *Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139, 927 P.2d 796, 799 (App. 1996); A.R.S. § 12-542; *see also Glaze v. Larsen*, 207 Ariz. 26, 30 n.1, ¶ 15, 83 P.3d 26, 30 n.1 (2004) (recognizing the standard applicable in a legal malpractice action arising in a non-litigation context). When the alleged malpractice occurs during the course of litigation, "accrual of the cause of action is deferred until the litigation in which the malpractice arose is finally resolved." *Commercial Union Ins. Co. v. Lewis & Roca*, 183 Ariz. 250, 256, 902 P.2d 1354, 1360 (App. 1995) (citations omitted). That is because "damages based on an attorney's acts and omissions in the course of litigation become ascertainable and non-speculative at the time the appellate process is either waived or completed. At that time, damages are 'irremedia[ble]' or 'irrevocable' because no opportunity exists to eliminate them through a successful appeal." *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 507, ¶ 13, 269 P.3d 678, 683 (App. 2011) (citations omitted).

¶16         Commencement of the limitations period does not wait for all damages to occur, however; instead, the limitations period "commences to run when the plaintiff incurs 'some injury or damaging effect from the malpractice.'" *Commercial Union*, 183 Ariz. at 255, 902 P.2d at 1359 (citation omitted); *see also Glaze*, 207 Ariz. at 30 n.1, ¶ 15, 83 P.3d at 30 n.1 (stating that a legal malpractice claim accrues "notwithstanding that the plaintiff's damages may not have been fully ascertainable at that time"). The occurrence of harm and the extent of damages are "two distinct concepts." *Commercial Union*, 183 Ariz. at 255, 902 P.2d at 1359. Moreover, once any discernible harm occurs, the clock starts ticking on a legal malpractice claim, even though the plaintiff's damages could be eliminated or substantially reduced by subsequent events. *Best Choice Fund*, 228 Ariz. at 508, ¶ 16, 269 P.3d at 684 (citation omitted).

¶17         In this case, we agree with the superior court that the undisputed facts establish that Appellants' damages were discernible, at the latest, as of October 15, 2003. By July 2003, the underlying litigation in

which Quarles & Brady was allegedly negligent – the *ALPA* action – had been finally resolved, and in their October 15, 2003 letter to Quarles & Brady, Appellants claimed Quarles & Brady's alleged negligence had caused them ascertainable, non-contingent harm. In that letter, Appellants not only disputed numerous charges for legal fees, but identified injuries allegedly caused by Quarles & Brady's failure to intervene in the *ALPA* action, acknowledged damages in the form of additional legal fees to file the *Adams* action and participate in the appeal of the *ALPA* case, and claimed the failure to intervene cost them a potential opportunity to present arguments in the *Adams* action. In pertinent part, the letter states:

> The failure by [Quarles & Brady] to get the original Motion to Intervene filed has cost us not only the opportunity to participate in a case already filed, but additional legal fees in preparing the stand-alone lawsuit, additional legal fees in participating in the appeal of the original case, as well as several of our most important arguments in our own case. This loss may very well jeopardize the remainder of our case.

Because Appellants expressly claimed they had been injured and suffered some ascertainable damage in the October 2003 letter, the superior court did not err in determining that the statute of limitations had begun running no later than October 15, 2003.

¶18        Appellants nevertheless assert that their malpractice claims did not accrue until October 10, 2006 - when the Supreme Court denied Appellants' petition for certiorari in *Adams*. Appellants argue that (1) their damages were not irremediable until *Adams* was finally resolved because, had they prevailed in *Adams*, "they would have suffered no substantial damage from the failure to earlier intervene in the *ALPA* proceedings," (2) compared to the loss of the pension benefits, the "wasted fees" and any other damages were not "substantial enough" to trigger commencement of the limitations period, and (3) *ALPA* and *Adams* were not "two distinct proceedings."

¶19        We find unavailing Appellants' arguments that their malpractice claims did not accrue until the *Adams* case was resolved. Even if Appellants' pension benefits could have been restored and their damages eliminated or substantially minimized through the subsequent litigation in *Adams*, Appellants' claims had already accrued when *ALPA* was resolved and Appellants recognized they had suffered discernible

harm. *See Best Choice Fund*, 228 Ariz. at 508, ¶ 16, 269 P.3d at 684; *Keonjian v. Olcott*, 216 Ariz. 563, 565, ¶ 10, 169 P.3d 927, 929 (App. 2007). Appellants' next argument - that they only suffered harm "substantial enough" to trigger the statute of limitations after *Adams* was resolved - improperly conflates the occurrence of harm with the extent of damages. *See Commercial Union*, 183 Ariz. at 255, 902 P.2d at 1359; *Ariz. Mgmt. Corp. v. Kallof*, 142 Ariz. 64, 68, 688 P.2d 710, 714 (App. 1984) (recognizing that a cause of action arises "before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence" (citations omitted)). Finally, we disagree with Appellants' argument that *ALPA* and *Adams* are not "distinct" cases and should be treated as one and the same. In this case, *ALPA*, not *Adams*, was the litigation in which Quarles & Brady's alleged malpractice arose, *see Commercial Union*, 183 Ariz. at 256, 902 P.2d at 1360, and Appellants' lost "opportunity to participate in a case already filed" was an injury that could not be remedied no matter the outcome in *Adams*.

¶20        Even assuming Appellants were unaware of any alleged injury as of July 2003, when the underlying *ALPA* litigation concluded, the statue of limitations on their claims against Quarles & Brady arose, at the latest, on October 15, 2003, when Appellants' expressly claimed they had been injured and suffered discernible harm. Appellants had two years to bring this action against Quarles & Brady - or until no later than October 15, 2005. They filed this lawsuit on September 23, 2008 – approximately three years after the statute of limitations expired, and well outside the two-year statute of limitations applicable to malpractice claims. Consequently, the superior court did not err in ruling that the two-year statute of limitations for malpractice claims bars Appellants' lawsuit.

### III.    Equitable Estoppel

¶21        Appellants argue that even if their lawsuit was not filed within the statutory period, Quarles & Brady should be equitably estopped from asserting the statute of limitations as a defense because

Quarles & Brady "induced" them to forbear filing suit until after the resolution of *Adams*.[4] We conclude that, on this record, the superior court did not err in rejecting Appellants' equitable estoppel argument.[5]

**¶22** To determine whether a defendant is estopped from asserting a limitations defense based on inducement to forbear filing suit, the superior court must determine:

> (1) whether the defendant engaged in affirmative conduct intended to cause the plaintiff's forbearance; (2) whether the defendant's conduct actually caused the plaintiff's failure to file a timely action; (3) whether the defendant's conduct reasonably could be expected to induce forbearance; and (4) whether the plaintiff brought the action within a reasonable time after termination of the objectionable conduct.

*Nolde*, 192 Ariz. at 281, ¶ 20, 964 P.2d at 482.

**¶23** Appellants contend that the *Nolde* test forecloses summary judgment because the test may involve factual questions to be decided by a jury. *See id.* ("Ordinarily, each of these inquiries will involve questions

---

[4] Appellants acknowledge they have found no Arizona legal malpractice cases in which the plaintiff/client asserted estoppel against a limitations defense. Citing cases from other states, however, Appellants assert that, "given appropriate facts, estoppel <u>may</u> be applied against a statute of limitations defense asserted in a legal malpractice action." Even assuming *arguendo* that Appellants' assertion is correct, however, we conclude that Appellants have not demonstrated the elements necessary to successfully assert their estoppel argument.

[5] Although the superior court's ruling did not explicitly address Appellants' equitable estoppel argument, the court was presented with the argument and necessarily rejected it by granting summary judgment on statute of limitations grounds. *See Johnson v. Elson*, 192 Ariz. 486, 489, ¶ 11, 967 P.2d 1022, 1025 (App. 1998) ("[W]e may infer additional findings of fact and conclusions of law sufficient to sustain the trial court's order as long as those findings are reasonably supported by the evidence, and not in conflict with any express findings." (citation omitted)); *cf. Blair v. Burgener*, 226 Ariz. 213, 220, ¶ 23, 245 P.3d 898, 905 (App. 2010) ("In denying Appellants' motion . . . the trial court necessarily rejected their arguments . . . .").

of fact, and therefore will be resolved by the fact finder.").  Appellants' contention ignores the further language of *Nolde*, however, which recognizes that equitable estoppel may be an appropriate issue for the court to resolve.  *See id*.  ("In some cases, however, a court appropriately may conclude as a matter of law that no reasonable jury could find for the plaintiff on one or more of these inquiries."  (citing *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008)).  *See also McCloud v. State*, 217 Ariz. 82, 86, ¶ 9, 170 P.3d 691, 695 (App. 2007) (concluding that because equitable estoppel sounds in equity, whether to apply equitable estoppel is a decision within the superior court's discretion (citations omitted)).

**¶24**        In this case, we conclude that Appellants cannot satisfy all of the elements of the *Nolde* test for establishing equitable estoppel.  *See Knight v. Rice*, 83 Ariz. 379, 381, 321 P.2d 1037, 1038 (1958) (recognizing that the party relying on estoppel bears the burden of showing by clear and satisfactory proof that all elements of estoppel are present).

**¶25**        To satisfy the first element of the *Nolde* test, Appellants must show that Quarles & Brady engaged in affirmative conduct intended to cause Appellants' forbearance to file suit.  192 Ariz. at 281, ¶ 20, 964 P.2d at 482.  To demonstrate such conduct, Appellants must identify specific promises, threats, or inducements by Quarles & Brady that prevented Appellants from filing suit.  *Id*. at 280, ¶ 16, 964 P.2d at 481.  Appellants allege that Quarles & Brady "induced" them to await the outcome of *Adams* before filing their legal malpractice lawsuit by representing to them that the failure to timely intervene in the *ALPA* case did not necessarily prejudice them and they could still obtain relief by filing the *Adams* case.  Appellants' allegation is legally insufficient to establish the first element of the *Nolde* test.  *See id*. at 280, ¶ 16, 964 P.2d at 481 ("Vague statements or ambiguous behavior by the defendant will not suffice."); *Knight*, 83 Ariz. at 381, 321 P.2d at 1038 (stating that the acts relied upon to establish equitable estoppel "must be absolute and unequivocal"); *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008 (stating that summary judgment is appropriate if facts submitted in support of a claim or defense "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense").  Although Quarles & Brady agreed to represent Appellants in the *Adams* lawsuit and in fact represented Appellants when Appellants filed the *Adams* action, Appellants have presented no evidence that Quarles & Brady engaged in affirmative conduct intended to cause Appellants' forbearance in filing suit against Quarles & Brady.

¶26        Moreover, even if Quarles & Brady's initial representation of Appellants in *Adams* might be construed as affirmative conduct intended to cause Appellants' forbearance in filing suit against Quarles & Brady, Appellants have provided no evidence to show Quarles & Brady's conduct *actually caused* Appellants' failure to file a timely action.  *See Nolde*, 192 Ariz. at 280-81, ¶¶ 17, 20, 964 P.2d at 481-82 (citing *Roer v. Buckeye Irrigation Co.*, 167 Ariz. 545, 547, 809 P.2d 970, 972 (App. 1990) ("In order to create an estoppel the conduct of the defendant must be so misleading as *to cause* the plaintiff's failure to file suit." (emphasis added to original))).    As the record reflects, soon after *Adams* was filed, Appellants replaced Quarles & Brady, and Appellants do not dispute that they relied on the advice of their new counsel in determining when to pursue their malpractice action.

¶27        Furthermore, even if Appellants could somehow show they actually relied on Quarles & Brady's conduct and representations to forbear filing suit, such reliance would not have been objectively reasonable.  *See id*. at 281, ¶ 20, 964 P.2d at 482.  "When considering the reasonableness of the plaintiff's failure to timely file, a court must determine whether the defendant's conduct resulted in duress so severe as to deprive a reasonable person of the freedom of will to file the action." *Id*. at 280, ¶ 18, 964 P.2d at 481 (citation omitted).  Although Appellants contend they were generally under duress because they faced the loss of their pensions, they point to no duress that would have deprived them of their freedom of will to file an action against Quarles & Brady, especially after they fired Quarles & Brady.[6]  Once Quarles & Brady's representation of Appellants ended, it was no longer objectively reasonable for Appellants to rely on any of the previous statements or advice of Quarles & Brady.[7]

---

[6]        Certainly, whatever duress Appellants were under did not prevent them from fully pursuing their claims in the *Adams* case.

[7]        Appellants were also required to bring suit within a reasonable time after termination of the conduct warranting estoppel.  *See Nolde*, 192 Ariz. at 280-81, ¶¶ 19-20, 964 P.2d at 481-82.  In this case, Appellants waited for approximately five years after removing Quarles & Brady as counsel before suing.  We do not address whether that length of time was reasonable.

**¶28** Given the facts presented by this record, Appellants cannot satisfy all elements of the *Nolde* test for asserting estoppel based on inducement to forbear filing suit. Consequently, their reliance on equitable estoppel must fail, and the superior court did not err in granting summary judgment in favor of Quarles & Brady. *See Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.[8]

### CONCLUSION

**¶29** The superior court's summary judgment in favor of Quarles & Brady is affirmed. As the prevailing party on appeal, Quarles & Brady is entitled to its reasonable costs upon compliance with Rule 21, ARCAP.



**Ruth A. Willingham · Clerk of the Court**
F I L E D : mjt

---

[8] Because we conclude the superior court did not err in determining that Appellants' claim is barred by the statute of limitations, and Quarles & Brady is not equitably estopped from raising the statute of limitations as a defense, we do not address the additional arguments raised by Quarles & Brady in support of affirming the judgment.