IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2002-0391 |
| Appellant, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| JOHN WILLIAM JACKSON, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20021942

Honorable Paul E. Tang, Judge

REVERSED AND REMANDED

Barbara LaWall, Pima County Attorney
  By Elizabeth Hurley                                                  Tucson
                                                       Attorneys for Appellant

Susan A. Kettlewell, Pima County Public Defender
  By John F. Palumbo                                                   Tucson
                                                        Attorneys for Appellee

P E L A N D E R, Presiding Judge.

¶1          On June 20, 2002, a Pima County grand jury indicted appellee John William

Jackson on seventy-eight counts of child molestation and sexual conduct with a minor under

fifteen years of age, allegedly committed against his daughter R. between August 1989 and

August 1992. On September 12, 2002, the trial court granted Jackson's motion to dismiss the charges on the ground they were barred by the statute of limitation. The state contends the trial court abused its discretion by granting the motion. We agree and therefore reverse the dismissal order and remand the case for further proceedings.

**BACKGROUND**

¶2 We view the scant evidence presented at the hearing on Jackson's motion in the light most favorable to upholding the trial court's ruling. *See State v. Vera*, 196 Ariz. 342, ¶ 3, 996 P.2d 1246, 1247 (App. 1999). At that hearing, a police report written by Officer Sueme was admitted into evidence pursuant to the parties' stipulation. The following facts are based solely on that report.[1] In 1994, Jackson had custody of his two children, his daughter R., who was then twelve years old, and his then ten-year-old son. That year, the aunt of one of R.'s friends, J.,[2] reported to the police that R. had told J. Jackson was doing "nasty things" and "messing with her." The report contained no details about Jackson's purported acts.

¶3 Three officers went to Jackson's home. Officer Sueme interviewed R. privately and told her what her friend's aunt had related to the police. R. immediately denied having made any such statements. Officer Sueme explicitly asked R. "if her dad ever had her touch any of his privates." R. denied any such activity, although she did tell Sueme "several

---

[1]Although apparently available, Officer Sueme did not testify at the hearing.

[2]According to Officer Sueme's report, J. is developmentally challenged. Although she was twelve years old in 1994, she reportedly had the mental age of a five or six year old.

times" that "just once her Dad [had] showed her his 'ding dong,'" but that it had been an accident. Jackson also denied any wrongdoing. He told the officers R. wanted to live with her mother in California rather than with him.

¶4        While the officers were at the residence, a neighbor came over and told them R. had also told the neighbor's daughter that Jackson was "messing" with R. R. again denied having made any such statements to her friends. She became upset when her friend's mother demanded that the officers remove R. from the home and at the thought that her father might "go to jail." R. also confirmed that she would prefer to live with her mother. Because R. denied "anything [was] happening" with her father and expressed a desire to remain at home, Sueme took no further action that day.

¶5        Two days later, Officer Sueme contacted Sergeant Spillman and asked him to review the case. Citing pressure R. had received from friends and neighbors, Sueme told Spillman she thought it advisable for someone to talk to R. while she was at school and "away from outside influences." Sueme stated in her report that Child Protective Services (CPS) needed to follow up by investigating the home, apparently because Jackson's home was very dirty and he needed some suggestions about his housekeeping practices. She also stated that a Detective Thompson had eventually spoken to R., but the record contains no information confirming any such conversation actually occurred.

¶6        A police report prepared by Detective Olson in 2000 also was admitted into evidence at the hearing on the motion to dismiss. In his report, Olson stated he had received information from California law enforcement authorities that R. had reported to them that

3

Jackson had molested her in 1994. Mistakenly noting that R. was "mentally slow," Olson reported that he found she had made the same report in 1994 in Tucson "and that it had been investigated and closed as unfounded." Olson contacted R.'s mother in California, told her of his findings, and then reported the case was closed.

¶7 According to undisputed facts in Jackson's motion to dismiss, in June 2002, Tucson police were told that Jackson's son had reported having been molested by Jackson between 1994 and 1997. In response, Detective Rydzak interviewed R., who reported that her father had sexually abused her on a regular basis for several years. Rydzak and two other detectives also interviewed Jackson, who denied all allegations of sexual misconduct with his children. One day later, however, Jackson telephoned Detective Rydzak, admitted that he had lied to her the day before, and told her he had something to confess. Four days later, Jackson was interviewed by detectives and admitted having molested R. once or twice a week from 1989, when she was eight years old, through 1992. Jackson denied any sexual conduct with his son. He was subsequently indicted for the offenses against R.

¶8 At the hearing on the motion to dismiss, Detective Rydzak testified that, when she investigates a child sexual abuse case, she generally first interviews the alleged victim. If the child denies that any abuse occurred, she will interview the person suspected of abusing the child. If that person tells her nothing has occurred, she will typically close the investigation. Rydzak also testified that she had been trained in how to interview children in such cases and that she conducts forensic interviews, those intended to obtain information from a child without leading questions or suggestions about what might have occurred. A

4

forensic interview is typically the only type of interview she conducts with children, and she said she reinterviews a child only if she obtains additional information, because repetitive interviewing can be very suggestive.

¶9 On cross-examination, Rydzak testified that, if she were assigned to a case and the investigating officer told her to go to a school and interview a child away from "outside influences," she would do so. She also testified that she had checked whether there were any 1994 reports in the case other than Officer Sueme's and that she had been unable to find any, raising the inference that neither Detective Thompson nor any other officer had interviewed R. at school.

## DISCUSSION

### I. Legal framework

¶10 The applicable statute of limitation on which the trial court based its ruling is A.R.S. § 13-107(B). That statute provides that "prosecutions . . . must be commenced within the following periods after actual discovery by the state . . . or discovery by the state . . . *that should have occurred with the exercise of reasonable diligence*, whichever first occurs." (Emphasis added.) In this case, the applicable period is seven years. § 13-107(B)(1). The statute also states that, "[f]or the purposes of subsection B of this section, a prosecution is commenced when an indictment, information or complaint is filed." § 13-107(C).[3]

---

[3]In 1997, the legislature amended A.R.S. § 13-107 by adding subsection (E), which states: "The period of limitation does not run for a serious offense as defined in [A.R.S.] § 13-604 during any time when the identity of the person who commits the offense or offenses is unknown." 1997 Ariz. Sess. Laws, ch. 135, § 1. The state concedes that statutory change "does not impact" this case. *See Martin v. Superior Court*, 135 Ariz. 99, 100, 659

5

**¶11** In ruling on Jackson's motion to dismiss, the trial court framed the issue as "whether the State exercised reasonable diligence in investigating the molestation allegation of [Jackson] made by [R.] in 1994." Thus, the trial court did not find that § 13-107(B)'s "actual discovery" standard applies or was satisfied here.[4] Rather, the court granted the motion on three grounds: (1) the state's lack of reasonable diligence in 1994 "to pursue the matter and to follow-up on significant leads," for example, by failing to interview R. at school and complete a referral to CPS; (2) the state's failure to exercise reasonable diligence in 2000 by investigating the report of the California authorities; and (3) the lack of evidence that Jackson had taken any affirmative steps to conceal his crimes.

## II. Standard of review

**¶12** "'We review an order granting a motion to dismiss criminal charges for an abuse of discretion or for the application of an incorrect legal interpretation.'" *State v. Sanchez*, 192 Ariz. 454, ¶ 4, 967 P.2d 129, 131 (App. 1998), *quoting State v. Lemming*, 188 Ariz. 459, 460, 937 P.2d 381, 382 (App. 1997). Similarly, we review for an abuse of

---

P.2d 652, 653 (1983); *State v. Escobar-Mendez*, 195 Ariz. 194, n.6, 986 P.2d 227, 231 n.6 (App. 1999). And, in any event, the identity of the person who allegedly had "mess[ed]" with R. and done "nasty things" to her was known in 1994. We disagree with Jackson's contention at oral argument in this court, however, that the addition of subsection (E) in 1997 somehow establishes that the legislature had not intended a probable-cause standard to apply to the discovery issue under subsection (B). *See* ¶¶ 28-30, *infra*.

[4]Although the state suggested otherwise at oral argument in this court, Jackson did argue below that "actual discovery" had occurred in 1994. He did not advance that theory in his answering brief. In his supplemental brief, however, Jackson contended, without elaboration, that the state had actually discovered his offenses in 1994. We disagree and therefore limit our analysis to the issue of constructive discovery, the basis on which the trial court ruled.

discretion a trial court's ruling on whether the state acted with reasonable diligence. *State v. Escobar-Mendez*, 195 Ariz. 194, ¶ 15, 986 P.2d 227, 230 (App. 1999). A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles. *See Gorman v. City of Phoenix*, 152 Ariz. 179, 182, 731 P.2d 74, 77 (1987); *State v. Fields*, 196 Ariz. 580, ¶ 4, 2 P.3d 670, 672 (App. 1999).

**¶13**    Interpretation of statutes is subject to our de novo review. *State v. Fell*, 203 Ariz. 186, ¶ 6, 52 P.3d 218, 220 (App. 2002). "[O]ur primary goal is to discern and give effect to the legislature's intent." *Id.* "To that end, we construe the statute's language, and if it is unclear, then consider its historical background, subject matter, context, effects, consequences, spirit, and purpose." *State v. Kearney*, 206 Ariz. 547, ¶ 5, 81 P.3d 338, 340 (App. 2003). In addition, we construe the statute of limitation at issue here "liberally in favor of the accused and against the prosecution." *Escobar-Mendez*, 195 Ariz. 194, ¶ 13, 986 P.2d at 230; *see also United States v. Habig*, 390 U.S. 222, 227, 88 S. Ct. 926, 929, 19 L. Ed. 2d 1055, 1059 (1968); *State v. Fogel*, 16 Ariz. App. 246, 248, 492 P.2d 742, 744 (1972).[5]

---

[5]In general, "a statute of limitations reflects a legislative judgment that, after a certain time, no quantum of evidence is sufficient to convict. And that judgment typically rests, in large part, upon evidentiary concerns—for example, concern that the passage of time has eroded memories or made witnesses or other evidence unavailable." *Stogner v. California*, 539 U.S. 607, ___, 123 S. Ct. 2446, 2452, 156 L. Ed. 2d 544, ___ (2003) (citations omitted); *see also Toussie v. United States*, 397 U.S. 112, 115, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156, 161 (1970) (to same effect, and also noting that a time limit for prosecuting criminal cases "may also have the salutary effect of encouraging law enforcement officers promptly to investigate suspected criminal activities").

### III. Burden and standard of proof

¶14  We first note that neither § 13-107 nor Arizona case law specifically addresses the questions of whether the state or the defendant bears the burden of proof or what the standard of proof is when a limitation issue is raised. For example, under § 13-107(B)(1), must a defendant establish that the prosecution is time barred because the state either discovered or reasonably should have discovered the offense more than seven years before the charges were filed? Or, rather, does the state have the burden of essentially proving a negative—that it neither actually nor constructively discovered the offense outside the limitation period? And what is the appropriate standard of proof that should apply to the discovery issues under § 13-107(B)?

¶15  Generally, the state bears the ultimate burden of persuasion on a statute-of-limitation issue. *See* Paul H. Robinson, *Criminal Law Defenses* § 202(a), at 464 (1984) (citing cases).[6] At oral argument, analogizing to motions relating to speedy trial rights, the state conceded that, if a defendant initially produces some reasonable evidence to support a

---

[6]*See also Bonel v. State*, 651 So. 2d 774, 775 (Fla. Dist. Ct. App. 1995) (once issue is raised, "the State has the burden to establish that the offense is not barred by the statute of limitations"); *State v. Lester*, 317 S.E.2d 295, 297 (Ga. Ct. App. 1984) (even when issue is raised before trial, "[t]he burden unquestionably is upon the State to prove that a crime occurred within the statute of limitation or to prove that the case properly falls within an exception"); *State v. Nuss*, 454 N.W.2d 482, 487 (Neb. 1990) (state bears burden of proving crime charged was committed within time fixed by law); *but see People v. Lopez*, 60 Cal. Rptr. 2d 511, 522-23 (Ct. App. 1997) (at hearing on defendant's pretrial motion to dismiss prosecution as time barred, "the defendant bears the burden of proving that the statute of limitations has run as a matter of law," and court should deny motion if "the evidence is in conflict"); *cf. People v. Wright*, 411 N.W.2d 826, 828 (Mich. Ct. App. 1987) (when factual issues relevant to statute-of-limitation defense are disputed, resolution of conflict is for trier of fact).

8

statute-of-limitation argument, the burden of persuasion then shifts to the state to show the prosecution is not time barred. *Cf. Humble v. Superior Court*, 179 Ariz. 409, 413, 880 P.2d 629, 633 (App. 1993) ("Once a defendant has established a prima facie violation of the Rule 8[, Ariz. R. Crim. P., 16A A.R.S.,] time limit and the state seeks exclusion of time under Rule 8.4, the state bears the burden of establishing the grounds for exclusion of the delay."). We agree.

¶16        The state argued, however, that the burden of persuasion had never shifted to it because Jackson failed to produce any reasonable evidence to support his statute-of-limitation contention. We disagree. Based on the time that elapsed between the initial allegations against Jackson in 1994 and the 2002 indictment, the 1994 police report, and the limited testimony below, we conclude that Jackson made a sufficient, prima facie showing on that issue to shift the burden to the state. *Cf. State v. Hyde*, 186 Ariz. 252, 266, 921 P.2d 655, 669 (1996) (party who bears burden of going forward must "produce sufficient preliminary evidence *before* the party with the burden of persuasion must proceed with its evidence"); *Rodriguez v. Arellano*, 194 Ariz. 211, ¶ 12, 979 P.2d 539, 543 (App. 1999) (defendant who establishes that evidence was seized pursuant to warrantless search has satisfied burden of going forward and has triggered state's burden of proving lawfulness of acquisition of challenged evidence).

¶17        The state also argued that its standard of proof on the limitation issue should be something less than beyond a reasonable doubt and suggested that failure to prove a timely prosecution does not necessarily divest a trial court of jurisdiction. In contrast, citing *State*

*v. Willoughby*, 181 Ariz. 530, 892 P.2d 1319 (1995); *Escobar-Mendez*; and several out-of-state cases,[7] Jackson argues that a criminal statute of limitation is jurisdictional and that the state bears the burden of proving beyond a reasonable doubt that the prosecution is not time barred.

¶18        In *Willoughby*, our supreme court announced that, "[i]n the very rare case in which jurisdiction is legitimately in issue because of contradicting jurisdictional facts, Arizona's territorial jurisdiction must be established beyond a reasonable doubt by the jury."[8] 181 Ariz. at 538, 892 P.2d at 1327.  In *Escobar-Mendez*, the court noted that "[s]tatutes of limitations in criminal cases are jurisdictional" and, therefore, that they "limit the power of the sovereign to act against the accused."  195 Ariz. 194, ¶ 13, 986 P.2d at 230; *see also Fogel*, 16 Ariz. App. at 248, 492 P.2d at 744.  Our supreme court also has recognized that principle.  *See Price v. Maxwell*, 140 Ariz. 232, 234, 681 P.2d 384, 386 (1984).  Thus, controlling Arizona authority clearly supports Jackson's assertion that a statute of limitation

_____

[7]*See United States v. Owens*, 965 F. Supp. 158, 162-63 (D. Mass. 1997) (government bears burden of proof "beyond a reasonable doubt just like any other element of the case" on whether statute of limitation was tolled by defendant's "fleeing from justice"); *Commonwealth v. Cogswell*, 583 N.E.2d 266, 269 (Mass. App. Ct. 1991); *State v. Pierce*, 782 P.2d 194, 196 (Utah Ct. App. 1989) (noting government's burden of presenting *some* evidence that prosecution is not time barred but finding that "burden of proof for establishing that the statute has not run is beyond a reasonable doubt"); *see also Lopez*, 60 Cal. Rptr. 2d at 518 ("In California, the statute of limitations in criminal cases is jurisdictional."); Paul H. Robinson, *Criminal Law Defenses* § 202(a), at 464 (1984) ("The burden of persuasion is nearly always on the state, beyond a reasonable doubt.").

[8]The parties neither briefed nor argued (below or on appeal) the issue of whether the trier of fact, rather than the trial court in a pretrial setting, should resolve statute-of-limitation issues when the facts bearing on such issues are conflicting.  Therefore, we do not address or decide that point.

does implicate a trial court's jurisdiction in criminal cases.[9] *See Price*; *Escobar-Mendez*; *Fogel*; *but see State v. Rodriguez*, 205 Ariz. 392, n.1, 71 P.3d 919, 922 n.1 (App. 2003) (superior court generally has subject matter jurisdiction "over any criminal case in which the defendant is charged by indictment or information with a felony").

¶19        For several reasons, however, we disagree with Jackson's contention that the state must prove beyond a reasonable doubt, at least at the pretrial stage, that a prosecution is not time barred. First, *Willoughby*, the only Arizona authority cited for his position, did not involve any statute-of-limitation issues and, therefore, did not address the standard-of-proof issue raised here. Second, the statute at issue in *Willoughby*, A.R.S. § 13-108(A), is clearly a jurisdiction statute (governing "[t]his state['s] . . . jurisdiction over an offense"), whereas § 13-107 relates only to time limitations and says nothing about jurisdiction. Third, *Willoughby* merely announced a rule that applies to "those rare cases . . . where controverted jurisdictional facts cannot be resolved without reaching the merits of the case." 181 Ariz. at 537 n.5, 892 P.2d at 1326 n.5; *see also id*. at 539, 892 P.2d at 1328 (noting that "a substantive issue of this case was inextricably bound with the jurisdictional issue"). Based on the limited record before us, we do not view this as a case in which any "controverted

---

[9]This appears to be a minority view. *See, e.g.*, *Cowan v. Superior Court*, 926 P.2d 438, 452 (Cal. 1996) (Brown, J., concurring and dissenting) (citing numerous cases and noting that, "[w]ith near uniformity, [other state and federal] courts have held that the statute of limitations in criminal cases does not go to the jurisdiction of the court but rather is an affirmative defense"); *People v. Burns*, 647 N.W.2d 515, 518 (Mich. Ct. App. 2002) (statute-of-limitation defense in criminal case is nonjurisdictional, waivable affirmative defense); *State v. Boyd*, 543 S.E.2d 647, 650 (W. Va. 2000) (expiration of statute of limitation does not terminate court's subject matter jurisdiction).

11

jurisdictional facts" bearing on the limitation and discovery issue "are intertwined with the substantive issues in the case." *Id*. at 537 n.5, 892 P.2d at 1326 n.5; *see also id*. at 536, 892 P.2d at 1325 (resolution of jurisdictional facts in *Willoughby* was "intertwined with proof of elements of the crime").

¶20        We acknowledge the court's statements in *Willoughby* that "jurisdictional facts must be established beyond a reasonable doubt in all cases in which jurisdictional facts are questioned," *id*. at 538, 892 P.2d at 1327, and that that standard even applies when, in the absence of any conflicting evidence, a trial judge determines before trial "whether the facts support[] the state's authority to prosecute th[e] case." *Id*. at 540, 892 P.2d at 1329. But we do not necessarily equate a statute-of-limitation issue with the type of pure, territorial jurisdiction issue addressed in *Willoughby*. Nor do we equate the issue of whether a prosecution was timely commenced with elements of the offense, which, of course, must be proved beyond a reasonable doubt.[10] *See id.* at 538, 892 P.2d at 1327 (declining to "equate jurisdiction with elements of the offense"); *People v. Smith*, 120 Cal. Rptr. 2d 185, 189 (Ct. App. 2002) ("[T]he statute of limitations is not an element of the offense."); *see also State v. Jensen*, 153 Ariz. 171, 176, 735 P.2d 781, 786 (1987) ("The due process clause places the

---

[10]The American Law Institute's (ALI) Model Penal Code (MPC) treats jurisdiction and limitation issues as elements of an offense that must be proved beyond a reasonable doubt. MPC §§ 1.12(1), 1.13(9)(d), (e) (1985). But, just as the court in *State v. Willoughby*, 181 Ariz. 530, 538, 892 P.2d 1319, 1327 (1995), was "not required to follow the ALI's recommended procedure for deciding jurisdiction" in the absence of a legislative mandate to do so, we do not subscribe to the MPC's approach on the limitation issue here.

burden on the prosecution to prove beyond a reasonable doubt every element of a criminal offense.").

¶21    Perhaps most importantly, the territorial jurisdiction issue addressed in *Willoughby* related solely to the defendant's contention "that Arizona lacked *subject matter jurisdiction* to try him for crimes committed in Mexico." 181 Ariz. at 535, 892 P.2d at 1324 (emphasis added). As the court noted, "[s]ubject matter jurisdiction . . . may not be waived or changed." *Id*. at 537-38 n.7, 892 P.2d at 1326-27 n.7; *see also State v. Marks*, 186 Ariz. 139, 141, 920 P.2d 19, 21 (App. 1996) ("Personal jurisdiction may be waived; subject matter jurisdiction may not."). Indeed, in *People v. McLaughlin*, 591 N.Y.S.2d 966, 968 (1992), cited with approval in *Willoughby*, the court stated that territorial jurisdiction "goes to the very essence of the State's power to prosecute and . . . may never be waived." *See also State v. Shrum*, 455 N.E.2d 531, 532-33 (Ohio Ct. App. 1982) (territorial jurisdiction cannot be waived); *State v. Dudley*, 581 S.E.2d 171, 180 (S.C. Ct. App. 2003) (territorial jurisdiction is aspect of subject matter jurisdiction that cannot be waived); *but see People v. Tamble*, 7 Cal. Rptr. 2d 446, 449 (Ct. App. 1992) (territorial jurisdiction is nonfundamental, waivable aspect of jurisdiction); *Gordon v. Commonwealth*, 568 S.E.2d 452, 454 (Va. Ct. App. 2002) (territorial jurisdiction may be waived); *State v. Randle*, 647 N.W.2d 324, 329 n.4 (Wis. Ct. App. 2002) (territorial jurisdiction is "an incident of personal jurisdiction that can be waived").

¶22    In contrast, our supreme court has noted, albeit in dicta, that a "statute of limitations defense must be raised or it is waived." *State v. King*, 158 Ariz. 419, 425 n.6, 763

13

P.2d 239, 245 n.6 (1988), *citing United States v. Wild*, 551 F.2d 418 (D.C. Cir. 1977). Similarly, a plethora of courts has concluded that, at least under certain circumstances, a criminal defendant may waive or forfeit a statute-of-limitation bar. *See, e.g.*, *Cowan v. Superior Court*, 926 P.2d 438, 441 (Cal. 1996); *People v. Stanfill*, 90 Cal. Rptr. 2d 885, 895 (Ct. App. 1999); *State v. Timoteo*, 952 P.2d 865, 870 (Haw. 1997); *People v. Burns*, 647 N.W.2d 515, 518 (Mich. Ct. App. 2002); *State v. Johnson*, 422 N.W.2d 14, 16 (Minn. Ct. App. 1988) (citing cases); *Conerly v. State*, 607 So. 2d 1153, 1158 (Miss. 1992); *State v. Wiemer*, 533 N.W.2d 122, 132-33 (Neb. Ct. App. 1995); *Hubbard v. State*, 920 P.2d 991, 993 (Nev. 1996); *State v. Lambrechts*, 585 A.2d 645, 646 (R.I. 1991); *State v. Boyd*, 543 S.E.2d 647, 650 (W. Va. 2000). Moreover, the United States Supreme Court also has implicitly condoned waiver of a criminal statute of limitation in some situations. *See Spaziano v. Florida*, 468 U.S. 447, 454-57, 104 S. Ct. 3154, 3158-60, 82 L. Ed. 2d 340, 348-50 (1984); *Biddinger v. Comm'r of Police*, 245 U.S. 128, 135, 38 S. Ct. 41, 43, 62 L. Ed. 193, 199 (1917).

¶**23**      In short, although Arizona cases have characterized a criminal statute of limitation as "jurisdictional,"[11] *see* ¶ 18 and n.9, *supra*, it is distinctly different from the type

---

[11]That characterization apparently emanated from *State v. Fogel*, 16 Ariz. App. 246, 248, 492 P.2d 742, 744 (1972), which cited as supporting authority *Waters v. United States*, 328 F.2d 739 (10th Cir. 1964), and *People v. Rehman*, 396 P.2d 913 (Cal. 1964). We note, however, that *Waters* represents "a distinct minority view in the federal courts," *State v. Noah*, 788 P.2d 257, 261 (Kan. 1990) (citing cases), and "has been questioned by other courts." *United States v. Cooper*, 956 F.2d 960, 961 (10th Cir. 1992). And the California Supreme Court more recently has rejected its prior view that "a court lacks fundamental subject matter jurisdiction over a time-barred criminal action." *Cowan*, 926 P.2d at 442 (defendant may expressly waive statute of limitation when waiver is for his or her benefit);

of territorial jurisdiction addressed in *Willoughby*. In our view, therefore, *Willoughby* does not mandate that the state prove beyond a reasonable doubt that the prosecution was timely commenced under § 13-107(B).

¶24 Jackson's argument for that higher standard also does not comport with the requisite standard of proof that applies to various other, pretrial criminal procedure matters. For example, under Rule 16.2(b), Ariz. R. Crim. P., 16A A.R.S., once a defendant has "establish[ed] a prima facie case that the evidence taken should be suppressed," the state then has "the burden of proving, by a preponderance of the evidence, the lawfulness in all respects of the acquisition of all evidence" the state plans to use at trial. *See also State v. Jimenez*, 165 Ariz. 444, 448-49, 799 P.2d 785, 789-90 (1990) (to rebut presumption that confessions resulting from custodial interrogation are inherently involuntary, "the state must show by a preponderance of the evidence that the confession was freely and voluntarily made"); *State v. Mohr*, 150 Ariz. 564, 566, 724 P.2d 1233, 1235 (App. 1986) (holding that "proof of venue need only be by a preponderance of the evidence, not proof beyond a reasonable doubt"); *cf.* Ariz. R. Crim. P. 7.2(c), 16A A.R.S. (state bears burden of establishing factual issues relating to defendant's release before or after conviction "by the preponderance of the evidence").

¶25 Because a preponderance-of-the-evidence standard applies even to constitutional issues raised in pretrial motions to suppress evidence, we see no reason to impose on the state a higher standard of proof for pretrial motions to dismiss on limitation

*see also People v. Stanfill*, 90 Cal. Rptr. 2d 885, 895 (Ct. App. 1999) (noting California's "now-abrogated rule that the statute of limitations is jurisdictional in the fundamental sense").

grounds, even if the latter are deemed "jurisdictional." *Cf. People v. Frazer*, 88 Cal. Rptr. 2d 312, 335 (1999) ("No provision of the United States Constitution explicitly confers upon criminal defendants a 'right to repose' by virtue of the length of time between commission of the crime and commencement of the prosecution."); *Timoteo*, 952 P.2d at 870 (criminal statute of limitation not based on fundamental, constitutional right, but rather, is "mere statutory act of grace that the sovereign state has conferred in order to limit its right to prosecute criminal offenders").

¶26 Accordingly, we hold that, once a defendant raises a limitation issue and, as here, presents some reasonable evidence to support it, the state bears the burden of establishing by a preponderance of the evidence that the prosecution is not time barred. We find persuasive the cases that have so held.[12] For purposes of § 13-107(B), the state must show that it timely commenced the prosecution within seven years of when it actually discovered or through the exercise of reasonable diligence should have discovered the offense. Imposing that burden on the state is consistent with Arizona's other, pretrial

---

[12]*See People v. Zamora*, 557 P.2d 75, 93 n.27 (Cal. 1976) (preponderance-of-evidence standard of proof applies to state's burden on limitation issues, including discovery question); *Lopez*, 60 Cal. Rptr. 2d at 521 (prosecution bears burden of proving by preponderance of evidence *at trial* that charged offense was committed within applicable limitation period); *Walstrom v. State*, 752 P.2d 225, 227-28 (Nev. 1988), *overruled in part on other grounds by Hubbard v. State*, 920 P.2d 991 (Nev. 1996) (state bears burden of proving by preponderance of evidence that crime was committed in secret manner, thereby tolling statute of limitation; "lesser standard is appropriate because proving the application of the exception to the statute is not the same as proving an element of the crime"); *State v. Tibor*, 373 N.W.2d 877, 883 (N.D. 1985) ("[B]ecause a statute of limitation does not go to the guilt or innocence of the accused . . . the State must prove compliance with the statute of limitation by a preponderance of the evidence.").

criminal procedure rules, the view of most courts, and the rule requiring us to liberally construe criminal statutes of limitation in favor of defendants.

## IV. Meaning and application of § 13-107(B)

¶27 We next turn to interpretation and application of § 13-107(B). Our attempt to determine and effect the legislature's intent is hindered by some ambiguity in the statute. Under § 13-107(B)(1), the seven-year limitation period is triggered by the state's actual or constructive "discovery." But, unfortunately, the statute does not prescribe "what" must actually or constructively be discovered for the limitation clock to start ticking. Nor does the statute state the degree of certainty with which the discovery must be made. For example, does the limitation period begin when the state discovers or reasonably should have discovered that a suspect possibly committed an offense, or rather, that he or she probably or definitely did so?

¶28 Because the statute does not clearly address or answer those questions, we must look beyond its wording and consider other relevant factors in determining its meaning and application here. In granting Jackson's motion to dismiss, the trial court correctly noted that "Arizona criminal statutes of limitations do not begin to run until the State actually discovers or should have discovered *that the offense occurred*."[13] (Emphasis added.) *See Escobar-*

---

[13]In his supplemental brief and at oral argument, Jackson conceded that the object of the actual or constructive discovery to which § 13-107(B) refers is "the offense." Under Arizona criminal law, an "offense," inter alia, "means conduct for which a sentence to a term of imprisonment or of a fine is provided by any law of the state." A.R.S. § 13-105(23). And "'[c]onduct' means an act or omission and its accompanying culpable mental state." § 13-105(5).

17

*Mendez*, 195 Ariz. 194, ¶ 14, 986 P.2d at 230. To the extent that statement suggests that, under § 13-107(B), the limitation period commences when the government has actually discovered or through the exercise of reasonable diligence should have discovered that the suspect *probably* committed the offense in question, we agree.[14]

¶29        We find support for that conclusion in *State v. Wilson*, 573 N.W.2d 248 (Iowa 1998). There, the trial court granted the defendants' motion to dismiss a theft-by-deception charge as time barred under Iowa's general statute of limitation, which required initiation of felony charges (except murder and sexual abuse of a minor) within three years after commission of the crime. Another statute, however, Iowa Code § 802.5, permitted commencement of prosecution for certain fraud-related crimes "'within one year after discovery of the offense.'" *Wilson*, 573 N.W.2d at 251. On appeal, the Iowa Supreme Court reversed the trial court's ruling and remanded the case for a factual determination on when the state had discovered the defendants' fraud for purposes of the latter statute. In providing guidance for that task on remand, the court stated:

> We are satisfied that the discovery rule here should include a probable cause element and a due or reasonable diligence requirement. We therefore hold that "discovery" for purposes of section 802.5 occurs when the authorities know or should know in the exercise of reasonable diligence that there is

---

[14]Citing California case law, Jackson contends § 13-107(B) only requires "discovery of an <u>offense</u>, and <u>not</u> discovery of the <u>offender</u>." *See, e.g.*, *People v. Crossman*, 258 Cal. Rptr. 370, 372 (Ct. App. 1989) ("The identity of the perpetrator of the crime is not an element of the discovery issue."). We do not address that point, however, because identity is not an issue in this case, and the tolling provision in current § 13-107(E) now controls cases in which serious offenses have been committed by unidentified persons. *See* n.3, *supra*.

18

probable cause to believe a criminal fraud has been committed. The probable cause requirement fits well with the language of section 802.5, which requires "discovery of the offense." The due or reasonable diligence requirement is in harmony with our civil discovery rule. It also promotes one of the purposes of a criminal statute of limitations: to discourage inefficient or dilatory law enforcement.

573 N.W.2d at 254.

¶30 Finding that reasoning persuasive, we likewise adopt "a probable cause element" in construing and applying § 13-107(B). *Id.* Therefore, the seven-year limitation period under that statute begins "when the authorities know or should know in the exercise of reasonable diligence that there is probable cause to believe a criminal [offense] has been committed." *Id.*

¶31 Probable cause exists "when reasonably trustworthy information and circumstance would lead a person of reasonable caution to believe that a suspect has committed an offense." *State v. Hoskins*, 199 Ariz. 127, ¶ 30, 14 P.3d 997, 1007-08 (2000). Applying that standard in this context is consistent with the probable-cause standard required for arrest or indictment in Arizona. *See* A.R.S. §§ 13-107(C) ("For the purposes of subsection B of this section, a prosecution is commenced when an indictment, information or complaint is filed."); 13-3883(A) (peace officer without warrant may arrest person if officer has probable cause to believe certain facts); 13-4201(1) (defining "accused" as person who has been arrested for felony and lawfully indicted or subjected to probable-cause determination); 21-413 (grand jury shall return indictment if convinced from all evidence that probable cause exists to believe accused is guilty of offense); Ariz. R. Crim. P. 12.1(d)(4),

19

16A A.R.S. (same); *see also* Ariz. R. Crim. P. 5.4, 16A A.R.S. (determination of probable cause in preliminary hearing).

¶32    In addition, considering such factors as the statute's spirit, purpose, consequences, and effects, we have no reason to believe the legislature intended to require the state to commence a prosecution before it possesses adequate information to legally initiate charges. In other words, the legislature presumably did not contemplate the limitation period beginning even before the state has actually or constructively discovered that an offense probably has been committed.[15]

¶33    Jackson argues, however, that applying a probable-cause standard to the discovery issue under § 13-107(B) "would defeat the recognized purposes of the statute of limitations and effectively render it a nullity." According to him, to designate the point at which the police have established "probable cause to believe a particular person committed an offense" as the triggering event that starts the limitation period "turns the statute on its head, as it removes the time that the police are actually investigating the offense from the limitations period, contrary to the purposes of the statute." Instead, Jackson argues, the limitation period should begin when police "have reasonable suspicion that a crime has occurred," even if the identity of the perpetrator or suspect is unknown.

---

[15]Through statutory amendments or new enactments, many states have lengthened, created special commencement rules for, or made more flexible the limitation periods that specifically apply to charges of sexual misconduct committed against minors. *See* Robinson, *supra* n.7, § 202(a), at 99-101 n.1 (2003-04 Supp.) (citing statutes); *see also id.* § 202(c), at 103 n.20.

¶34 Jackson relies on several California cases to support that proposition. In *People v. Zamora*, 557 P.2d 75 (Cal. 1976), the court addressed complicated facts concerning two fires intentionally set to collect insurance proceeds and ultimately concluded that the resulting criminal charges were barred by the applicable statute of limitation that, like Arizona's, included a discovery-based trigger. In so holding, the court alluded to the following rule that applied to civil cases in California: "'The statute commences to run . . . after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.'" *Id.* at 91, *quoting Hobart v. Hobart Estate Co.*, 159 P.2d 958, 972 (Cal. 1945). Nonetheless, the court in *Zamora* did not expressly adopt a reasonable-suspicion, or inquiry-notice, standard for determining the point at which the limitation period for criminal charges would commence. Rather, the court merely held "as a matter of law the uncontradicted evidence produced at trial show[ed] that with the exercise of reasonable diligence the facts constituting the acts of grand theft could have been discovered at an earlier time." *Id*. at 94. In addition, the court later noted that "[o]nce there is sufficient knowledge (judged by the standards we have set forth herein) that a theft *has been committed* the limitation period will begin to run." *Id.* at 98 n.33 (emphasis added).

¶35 Subsequent California cases also cast doubt on whether the reasonable suspicion or "inquiry" standard mentioned in *Zamora* is actually applied in practice. For example, in *People v. Crossman*, 258 Cal. Rptr. 370, 372 (Ct. App. 1989), the court quoted that standard but then stated: "The question is whether there is sufficient knowledge that a crime *has been committed*." (Emphasis added.) In addition, the *Crossman* court noted that,

21

generally, "'[f]or the purposes of triggering the statute of limitations . . . , a discovery [i]s held not to have occurred even though officials learned substantial facts which would have only created a suspicion of wrongdoing.'" *Id*. at 373, *quoting People v. Kronemyer*, 234 Cal. Rptr. 442, 454 (Ct. App. 1987); *see also People v. Lopez*, 60 Cal. Rptr. 2d 511, 519 n.4 (reciting *Zamora*'s standard for when limitation period commences, but also noting that "it is the discovery of the crime, and not just a loss, that triggers the running of the statute").

¶36        Moreover, in *Commonwealth v. Hawkins*, 439 A.2d 748 (Pa. Super. Ct. 1982), to which the court in *Crossman* cited, the Pennsylvania court stated that "discovery of the offense" for purposes of triggering the limitation period had not occurred when "only a suspicion existed" that a crime had been committed. *Id*. at 750, 751; *see also People v. McGreal*, 278 N.E.2d 504, 510 (Ill. App. Ct. 1971) ("'discovery of the offense'" for purposes of triggering limitation period "mean[s] gaining knowledge of or finding out that a penal statute *has been violated*") (emphasis added), *quoting* Ill. Rev. State. ch. 38 par. 3-6(b) (1969). In short, to the extent the out-of-state authorities on which Jackson relies support his argument, we do not find them persuasive and, therefore, decline to apply a reasonable-suspicion or inquiry-notice standard to § 13-107(B).

¶37        Applying a probable-cause standard to § 13-107(B) will not necessarily produce the drastic, ill-advised consequences Jackson postulates. *See* ¶ 33, *supra*. Contrary to Jackson's assumption, commencement of the limitation period will not depend on law enforcement officers actually establishing probable cause to arrest or charge a suspect. Rather, absent actual discovery, the limitation period will commence when the government,

through the exercise of reasonable diligence, "should have" discovered probable cause to believe an offense has been committed, even though probable cause is only later actually established. § 13-107(B).

¶38 In addition, a probable-cause standard is not unworkable in practice, as Jackson apparently suggests. Once probable cause is established and charges have been filed, a defendant's statute-of-limitation contention and its related discovery issues under § 13-107(B) can be viewed through the lens of all facts known at the later time. In other words, the facts ultimately discovered and used to support probable cause will be highly relevant in determining whether, with reasonable diligence, the state should have discovered such facts more than seven years before the prosecution commenced.

¶39 Adoption of a probable-cause standard also is consistent with Arizona's statute-of-limitation jurisprudence in the civil context. Under the common law "discovery rule," a cause of action accrues for purposes of A.R.S. § 12-542, and the limitation period then begins, when "the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 191 Ariz. 313, ¶ 29, 955 P.2d 951, 960 (1998); *see also Walk v. Ring*, 202 Ariz. 310, ¶ 22, 44 P.3d 990, 996 (2002) (for limitation period to commence, "it is not enough that a plaintiff comprehends a 'what'; there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault"); *Nolde v. Frankie*, 192 Ariz. 276, ¶ 31, 964 P.2d 477, 484 (1998) ("[A] cause of action based on sexual abuse accrues when the plaintiff becomes aware of the 'what' and the 'who' elements of the claim,

23

i.e., the conduct constituting the sexual abuse and the identity of the abuser.") (citation omitted); *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979) (cause of action accrues when plaintiff knows or reasonably should know of "defendant's negligent conduct" or "when the plaintiff is first able to sue"); *Logerquist v. Danforth*, 188 Ariz. 16, 19, 932 P.2d 281, 284 (App. 1996).

¶40        Regardless of the level or timing of R.'s awareness that Jackson had sexually abused her during the 1989-1992 time frame or beyond, *see Nolde*, 192 Ariz. 276, ¶ 32, 964 P.2d at 484, the record reflects that she did not convey that information to law enforcement authorities until 2000 and that the state did not obtain information from any other source to substantiate the charges before then.   Construing § 13-107(B) "in harmony with our civil discovery rule," *Wilson*, 573 N.W.2d at 254, we cannot say that the state, more than seven years before obtaining the indictment, discovered or reasonably should have discovered "the facts underlying the [charges]." *Doe*, 191 Ariz. 313, ¶ 29, 955 P.2d at 960.   That is to say, the record does not support a finding as a matter of law that the state knew or reasonably should have known that Jackson probably had engaged in criminal "conduct constituting the sexual abuse" against R. *Nolde*, 192 Ariz. 276, ¶ 31, 964 P.2d at 484.

¶41        Having concluded that § 13-107(B) implicitly requires the state to show by a preponderance of the evidence that reasonable diligence would not have led to discovery of the crime, we further conclude that the state's failure to adequately investigate or otherwise

exercise reasonable diligence, in and of itself, does not bar a prosecution.[16] Rather, the actual or constructive discovery addressed in § 13-107(B) must relate to facts that show that a particular offense probably was committed. *See Zamora*, 557 P.2d at 98 n.33. Mere suspicion or conjecture that a suspect might have committed an offense is insufficient to trigger the limitation period. *See Crossman*; *Hawkins*. Notwithstanding our duty to liberally construe § 13-107(B) most favorably to a defendant, to conclude otherwise would require an unreasonable construction of the statute. *See State v. Wood*, 198 Ariz. 275, ¶ 7, 8 P.3d 1189, 1191 (App. 2000) ("In construing criminal statutes we apply practical, common sense constructions, not hyper-technical ones that would tend to frustrate legislative intent."); *see also State v. Rodriguez*, 205 Ariz. 392, ¶ 11, 71 P.3d 919, 923 (App. 2003). For the foregoing reasons, we apply a common-sense, probable-cause standard to § 13-107(B).

## V. Review of trial court's ruling

¶42 In reviewing a trial court's ruling, we will not disturb its factual findings unless they are clearly erroneous or unsupported by any reasonable evidence, but we review any legal conclusions de novo. *State v. O'Dell*, 202 Ariz. 453, ¶ 8, 46 P.3d 1074, 1077-78 (App. 2002); *Escobar-Mendez*, 195 Ariz. 194, ¶ 15, 986 P.2d at 230. We cannot say the trial court clearly erred in finding that the state had "failed to take reasonable steps to pursue the matter and to follow-up on significant leads" in 1994. But, on the other hand, applying the

---

[16]At oral argument, Jackson contended that, even if the police had exercised all due diligence by fully investigating the allegations against him in 1994 and finding no basis to file charges, this prosecution initiated in 2002 would still be untimely. In our view, neither § 13-107(B) nor common sense supports that argument.

probable-cause standard, we cannot say the state would or should have discovered probable cause to charge Jackson by 2001 (i.e., within seven years of the 1994 report) had it exercised reasonable diligence by further investigating the unconfirmed reports of his alleged sexual misconduct in 1994.[17]  The record supports no such finding, and the trial court did not so find.  Indeed, the trial court recognized the lack of evidence that reasonable diligence would or should have led to discovery of the crimes by noting in its ruling:  "It is speculative whether an out-of-home interview would have resulted in the victim's cooperation with sex crime investigators.  It is also uncertain what, if anything, CPS might have learned had the referral been executed."

¶43        As noted above, the state bore the burden of proving by a preponderance of the evidence that it neither actually nor constructively discovered, more than seven years before the indictment against Jackson was filed, that the offenses against R. probably had been committed.  The scant record before us leaves open the question of whether the state met or can meet that burden.  The record is devoid of any evidence that, had the police interviewed R. at school or reported the case to CPS,[18] either Jackson or R. probably would have admitted that the sexual abuse had occurred.  Indeed, R. waited until she was eighteen years old before she finally made the accusations against her father.  Nor does the record reflect that, had the

---

[17]As for the failure of Tucson police to follow up in 2000, the state had seven years from that date to file charges.  Its filing in 2002 was well within that time period.

[18]No evidence established whether Tucson police routinely sought CPS intervention whenever child sexual abuse was alleged or whether the police in 1994 had wanted CPS follow-up for anything other than Jackson's dirty house and need for housekeeping advice.

state exercised reasonable diligence during the 1994-2001 time frame, other evidence of the offenses would or should have been uncovered.

¶44 In sum, the record does not support a finding, even had the trial court made one, that the state should have discovered more than seven years before Jackson was indicted that he probably had committed the charged offenses.[19] *See Lopez*, 60 Cal. Rptr. 2d at 523 (reversing order dismissing indictment on statute-of-limitation grounds because evidence failed to establish that governmental victim "knew or should have known" of defendant's illegal conduct). *Escobar-Mendez*, on which the trial court relied, is distinguishable and does not alter our conclusion. Unlike R., the victim in that case immediately disclosed the defendant's prior sexual offenses when a police officer first contacted and interviewed her, and the defendant was indicted ten months later. Here, in contrast, R. and Jackson both vehemently and consistently denied any sexual impropriety when police officers interviewed them in 1994, and no independent evidence corroborated the unconfirmed reports by R.'s friends. In addition, the cases Division One cited in *Escobar-Mendez* on the issue of reasonable diligence contained evidence that, had reasonable diligence been used, the relevant facts at issue would have been discovered. *See Snow v. Superior Court*, 183 Ariz. 320, 325, 903 P.2d 628, 633 (App. 1995) (had state exercised reasonable diligence, it probably would have located defendant outside Arizona for purposes of speedy-trial rule);

---

[19]In the police report, Officer Sueme checked "yes" in certain boxes, including boxes labeled "Addl. Reason to Invest.?" and "Prosecute?" Without any explanation or elaboration of those entries, however, we find them insufficient to establish that the police would have discovered probable cause to charge Jackson earlier had further investigation been undertaken in 1994.

*Humble*, 179 Ariz. at 414, 880 P.2d at 634 (state admittedly failed to pursue four significant, investigative leads that likely would have led to successful service of summons or warrant on defendant); *State v. Armstrong*, 160 Ariz. 159, 161, 771 P.2d 889, 891 (App. 1989) (dismissal on speedy-trial grounds upheld because, had state attempted to serve defendant by mail, summons would have reached defendant). Again, the record here does not necessarily support that conclusion.

**CONCLUSION**

¶45 The trial court misapplied the law in granting the motion to dismiss the charges and, therefore, abused its discretion. *See Gorman*; *Fields*. Accordingly, we reverse that ruling and remand the case for further proceedings. Obviously, however, when the parties litigated and the trial court ruled on Jackson's motion to dismiss, they lacked the benefit of our analysis and conclusion. Under the circumstances, we deem it appropriate to remand the case for further proceedings consistent with the standards set forth in this opinion.[20] *See United States v. Jordan*, 256 F.3d 922, 933 (9th Cir. 2001) (remanding case for trial court to

---

[20]The state contends Jackson concealed his crimes by lying to the police and suggesting a motive for his daughter to have fabricated any claims of abuse in 1994. Such concealment, the state argues, tolled the statute of limitation until 2002, when R.'s "unambiguous allegations were reported to and substantiated by law enforcement." *See Escobar-Mendez*, 195 Ariz. 194, ¶¶ 19-21, 986 P.2d at 231-32; *cf. Logerquist v. Danforth*, 188 Ariz. 16, 21, 932 P.2d 281, 286 (App. 1996). The trial court, however, was "unable to find" on the record before it that Jackson had "attempted to conceal his actions." Although we have no basis for overturning that ruling on the sparse record here, we do not foreclose the parties and trial court from revisiting that issue on remand. *See Nolde v. Frankie*, 192 Ariz. 276, ¶ 21, 964 P.2d 477, 482 (1998) (when trial court had not measured plaintiffs' allegations against equitable estoppel standard defined on appeal, case remanded to permit trial court to determine whether defendant's affirmative conduct had "actually and reasonably induced the plaintiffs to delay filing suit, and whether their delay was reasonable").

determine whether evidence satisfied new standard of proof announced on appeal); *State v. McDowell*, 310 S.E.2d 301, 310 (N.C. 1984) ("When findings of fact must be made in light of a prevailing legal standard, a new explication of the standard justifies our remanding the case for reconsideration *de novo* based upon the new explication."). On remand, the trial court, in its discretion, may conduct any further proceedings it deems appropriate or necessary to better develop the record on the relevant, discovery-related issues under § 13-107(B).[21]

_____
JOHN PELANDER, Presiding Judge

CONCURRING:

_____
PHILIP G. ESPINOSA, Chief Judge

_____
PETER J. ECKERSTROM, Judge

_____

[21]We note that Officer Sueme, who was directly involved in the 1994 investigation and who authored the report in evidence, was available but did not testify at the hearing on Jackson's motion to dismiss. She and other relevant witnesses might be helpful in clarifying various factual questions that the current record leaves open.